AARON DWAYNE OSMOND, Employee, Plaintiff v. CAROLINA CONCRETE
SPECIALTIES, Employer and KEY BENEFIT SERVICES, Carrier, Defendants

No. COA01-1203

(Filed 16 July 2002)

**1. Workers' Compensation— special errand rule—sufficiency of evidence**

There was competent evidence to support the Industrial Commission's ruling in a workers' compensation case that plaintiff's injury was compensable under the special errand exception to the coming and going rule where plaintiff was injured while riding to work and, on this day, he had been told to be ready an hour and a half earlier than in the past so that a dump truck could be picked up and driven to the work site.

**2. Workers' Compensation— disability—burden of proof**

The Industrial Commission did not err in a workers' compensation action by determining that plaintiff suffered a compensable injury and awarding temporary total disability and temporary partial disability where plaintiff presented evidence that he had returned to work at diminished earnings since his injury, there were no findings that defendant presented any evidence that plaintiff was offered vocational rehabilitation or employment with defendant, and there was no finding that defendant presented any evidence that plaintiff was capable of earning higher wages. Plaintiff met his burden of proving employment at a diminished capacity, shifting the burden to defendant to prove that he was capable of earning high wages, and defendant failed to meet that burden.

Appeal by defendants from opinion and award filed 26 July 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 22 May 2002.

*Mark T. Sumwalt, P.A., by Mark T. Sumwalt and Vernon Sumwalt, for plaintiff-appellee.*

*Orbock Bowden Ruark & Dillard, PC, by Barbara E. Ruark, for defendants-appellants.*

WALKER, Judge.

On 23 August 1999, plaintiff was working for defendant-employer (defendant) as a laborer. Plaintiff's supervisor, Greg Braun, was the

husband of the owner of defendant. Plaintiff, plaintiff's brother, and a co-employee, Joe Whitehead, lived together south of Charlotte in South Carolina. Mr. Whitehead typically drove plaintiff and his brother to work since they did not have transportation; however, on 23 August 1999, Mr. Whitehead's vehicle was inoperable. Mr. Braun agreed to pick up the three of them.

Mr. Braun instructed them to be ready at 5:30 a.m. This was an hour and a half earlier than he had required them to be ready when he picked them up in the past. Upon arriving at plaintiff's home, Mr. Braun instructed Mr. Whitehead to stay at home to fix the vehicle so that he would be able to drive in the future. Mr. Braun intended to drive plaintiff and his brother back to Mr. Braun's house north of Charlotte at Lake Norman to pick up a dump truck to be used at work. One person was to drive the dump truck to the work site located south of Charlotte while another was to drive Mr. Braun's pick-up truck so that he could leave the dump truck at the site and still have transportation home. Plaintiff's brother was not experienced in driving a dump truck and did not have a valid driver's license. Mr. Braun knew that plaintiff had experience driving dump trucks while in the military.

While traveling from plaintiff's house back to his house to get the dump truck, Mr. Braun lost control of his pick-up truck and wrecked. Plaintiff, who was riding in the back of the pick-up truck, was thrown out and sustained a severe head injury. He was initially treated at Carolinas Medical Center and he was finally discharged from inpatient care on 21 September 1999. He was released to return to work in December of 1999.

On 20 December 1999, plaintiff began working as a dishwasher at a restaurant in South Carolina; however, he only worked there for one week. He then worked for one week in New York in February of 2000. In March of 2000, plaintiff returned to North Carolina and began working for Black and Decker through a temporary service. As of the date of the hearing, he was still employed at Black and Decker at a pay rate less than what he was earning with defendant prior to his injury.

After a hearing, the Industrial Commission (Commission) found the following additional facts in part:

16. The evidence of record is unclear who would have driven the dump truck and the pickup truck after Mr. Braun, plaintiff and

Donald Osmond arrived at Mr. Braun's house at Lake Norman. However, the evidence clearly shows that Donald Osmond had failed a road test given by Mr. Braun and was unable to drive the dump truck. Joe Whitehead, Donald Osmond and plaintiff believed plaintiff was to drive the dump truck upon arrival at Mr. Braun's house. Mr. Braun knew plaintiff had military experience driving a dump truck.

17. At the time of the accident, plaintiff had a valid driver's license, but Donald Osmond did not. Therefore, the greater weight of the evidence by inference demonstrates that Mr. Braun asked plaintiff to accompany him back to Mr. Braun's house on August 23, 1999 so plaintiff could drive the dump truck to the job site. Mr. Braun required the assistance of plaintiff in order to have two vehicles driven to the job site, which benefited [sic] defendant-employer.

18. Defendant-employer required plaintiff to travel on a special errand on August 23, 1999. The hazards of this route of travel became the hazards of plaintiff's employment with defendant-employer.

19. On August 23, 1999 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.

20. As a result of the compensable injury by accident, plaintiff was disabled and unable to earn wages in any employment from August 23, 1999 until December 20, 1999. Thereafter, plaintiff's wage earning capacity was diminished in that he was unable to earn the same wages he was earning at the time of his injury.

The Commission concluded the following in part:

2. In this case plaintiff was on a special errand that directly benefitted his employer. Plaintiff's supervisor, Mr. Braun, required the assistance of plaintiff in order to transport the two vehicles to the job site. Mr. Braun instructed plaintiff to be ready at 5:30 a.m. so that Mr. Braun, plaintiff and Donald Osmond would avoid the rush-hour traffic and have time to drive to the Lake Norman location to pick up the dump truck and then continue back to the Charlotte job site. Therefore, plaintiff's injury is compensable under the special errand exception to the coming and going rule . . . . On August 23, 1999, plaintiff sustained an injury

by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).

3. As a result of his compensable injury by accident on August 23, 1999, plaintiff was disabled and is entitled to temporary total disability compensation at the rate of $216.88 per week from August 23, 1999 through December 19, 1999. N.C. Gen. Stat. § 97-29.

4. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to compensation for partial disability at the rate of two-thirds of the difference between his former average weekly wage of $325.31 and the weekly wages he was able to earn from December 20, 1999 and continuing for as long as he remains so disabled, subject to the 300-week statutory limitation. He shall receive his full compensation rate during any weeks he was not so employed. N.C. Gen. Stat. § 97-30.

[5]. Plaintiff is entitled to have defendants provide all medical treatment incurred or to be incurred as a result of his compensable injury by accident. N.C. Gen. Stat. § 97-25.

Defendant contends on appeal that the trial court erred in finding plaintiff suffered a compensable injury and in awarding disability benefits.

[1] Defendant first contends that the accident was not one "arising out of and in the course of the employment" and thus not compensable. To be a compensable injury under the Workers' Compensation Act, the injury must be "by accident arising out of and in the course of the employment." N.C. Gen. Stat. § 97-2(6) (2001). "Whether an injury arises out of and in the course of a claimant's employment is a mixed question of fact and law," and this Court is limited to determining whether there is competent evidence to support the Commission's findings and conclusions. *Creel v. Town of Dover*, 126 N.C. App. 547, 552, 486 S.E.2d 478, 481 (1997).

"Ordinarily, an injury suffered by an employee while going to or coming from work is not an injury arising out of and in the course of employment." *Felton v. Hospital Guild*, 57 N.C. App. 33, 34, 291 S.E.2d 158, 159, *aff'd*, 307 N.C. 121, 296 S.E.2d 297 (1982). However, there is an exception to this rule where an employee "is injured while performing a special duty or errand" which directly benefits the employer. *McBride v. Peony Corp.*, 84 N.C. App. 221, 227, 352 S.E.2d 236, 240 (1987). Whether there was a special errand and when the errand began and ended is a question of fact and is to be

determined on a case-by-case basis. *Felton,* 57 N.C. App. at 35, 291 S.E.2d at 159.

Here, plaintiff's supervisor required plaintiff to be ready at 5:30 a.m. which was an hour and a half earlier than he had ever required plaintiff to be ready in the past. Plaintiff had experience in driving dump trucks while his brother was not qualified to drive a dump truck nor did he have a valid driver's license. Plaintiff's driving the dump truck to the work site directly benefitted the employer. The Commission found "the greater weight of the evidence by inference demonstrates that Mr. Braun asked plaintiff to accompany him back to Mr. Braun's house on August 23, 1999 so plaintiff could drive the dump truck to the job site." Thus, the Commission concluded "plaintiff was on a special errand that directly benefitted his employer . . . . Therefore, plaintiff's injury is compensable under the special errand exception to the coming and going rule." We find there was competent evidence to support the Commission's findings which, in turn, support its conclusions.

**[2]** Defendant next contends the trial court erred in ordering compensation past 1 December 1999 when plaintiff was released to return to work. Disability under the Workers' Compensation Act is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9). Thus, disability means "a diminished capacity to earn money rather than physical infirmity." *Arrington v. Texfi Industries,* 123 N.C. App. 476, 478, 473 S.E.2d 403, 405 (1996).

The burden is on the employee to show that he is unable to earn the same wages as he had before the injury and thus he is still disabled under the statute. *Bond v. Foster Masonry, Inc.,* 139 N.C. App. 123, 131, 532 S.E.2d 583, 588 (2000). One method of meeting this burden is "by producing evidence that he has obtained other employment at a wage less than that earned prior to the injury." *Larramore v. Richardson Sports Ltd. Partners,* 141 N.C. App. 250, 259, 540 S.E.2d 768, 773 (2000), *aff'd,* 353 N.C. 520, 546 S.E.2d 87 (2001) (*citing Bond,* 139 N.C. App. at 131, 532 S.E.2d at 588). Our Supreme Court recently affirmed this Court's holding in *Larramore* that an employee's evidence of employment at a diminished capacity shifted the burden to the employer to establish that the employee could have obtained higher earnings. *Larramore,* 141 N.C. App. at 259-60, 540 S.E.2d at 773.

Here, plaintiff presented evidence that, since the injury and his medical release, plaintiff had returned to work at diminished earnings. There are no findings by the Commission that defendant presented any evidence that plaintiff was offered vocational rehabilitation or employment back with defendant. Furthermore, there was no finding that defendant presented any evidence that plaintiff was capable of earning higher wages. We can only conclude that plaintiff met his burden of proving employment at a diminished capacity, thus shifting the burden to defendant to prove that plaintiff was capable of earning higher wages, which burden defendant failed to meet. *See Larramore, supra.* and *Bond, supra.* Thus, we find the Commission did not err in finding that plaintiff was temporarily partially disabled since 20 December 1999 under the Workers' Compensation Act.

In conclusion, we find the Commission did not err in determining that plaintiff suffered a compensable injury and awarding temporary total disability until 20 December 1999 and temporary partial disability since 20 December 1999. The order and award of the Commission is

Affirmed.

Judges McCULLOUGH and BRYANT concur.