***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Gheen, along with the briefs and arguments on appeal. The appealing party has not shown good ground to amend the prior Opinion and Award. Accordingly, the Full Commission AFFIRMS the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the Workers' Compensation Act. The employer-employee relationship existed between the plaintiff, Latonya Morgan, and the defendant, Cracker Barrel Restaurants, on November 6, 1999. Plaintiff was employed as a food prep/dishwasher/hostess. Defendant disputes whether or not plaintiff's automobile accident of November 6, 1999 arose out of and occurred in the course of her employment.
2. Cracker Barrel is a duly qualified self-insurer with Risk Enterprise Management, LTD as its servicing agent.
3. The parties stipulate that plaintiff's average weekly wage at the time of the injury was $219.85, subject to further wage verification the parties might be able to provide.
4. Plaintiff was injured in an automobile accident on November 6, 1999, while driving a car owned by Gordon Fincham, a General Manager for defendant.
 ***********
Based upon all of the competent evidence in the record, the undersigned makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was twenty-seven years old. Plaintiff is a high school graduate with an IQ of sixty-four. Plaintiff had passed a drivers' education class in high school but never secured a valid North Carolina driver's license. Plaintiff occasionally unlawfully operated her parents' motor vehicle.
2. At the time of the accident, defendant employed plaintiff on a part-time basis at the Smithfield, North Carolina location. Plaintiff had worked for defendant in Smithfield, North Carolina since 1997. Her job responsibilities varied and included dishwasher, hostess, and food preparation. In food preparation, plaintiff prepared salads and desserts in the kitchen of the restaurant.
3. On the date of the accident, plaintiff reported to work between 10:00 a.m. and 11:00 a.m., and was assigned to work with food preparation due to a lack of employees in that area.
4. While plaintiff was working, she either started her menstrual period or experienced another feminine discharge, which soiled through her undergarment to the outside of the pants she was wearing. Plaintiff requested permission to leave the restaurant to change clothing. The retail manager, Belinda Parker, informed plaintiff that she could do so, but that she needed to tell Fincham.
5. After asking permission from Fincham, plaintiff attempted to call someone to bring her a change of clothes, or to determine if someone could take her home, but was unable to find anyone to do so. A fellow employee, Tami Jones, volunteered to take plaintiff home, but was unable to leave the restaurant as she was working, and the restaurant was short-staffed due to a shift change.
6. When plaintiff was unable to find anyone to bring her clothes or to take her home to change clothes, she spoke to Fincham about the problem. Fincham inquired as to whether plaintiff would return to work after changing clothes. Plaintiff informed Fincham that she would complete her shift if she were able to change clothes. Fincham gave plaintiff his car keys and allowed plaintiff to drive his personal automobile to change clothes with the understanding that plaintiff would then return to complete her shift.
7. Fincham testified he was under the impression that plaintiff was driving to her sister's home to change clothes, which was approximately five minutes from the restaurant. Fincham specifically testified that he asked plaintiff if she had a driver's license prior to giving her the keys, and that she falsely indicated that she did.
8. Plaintiff drove Fincham's car to her home, approximately fifteen to twenty minutes away from the restaurant, and changed clothes. Plaintiff's mother, Magaline Pierce (hereinafter "Pierce"), was at home when plaintiff arrived.
9. Pierce testified that plaintiff informed her that Fincham understood plaintiff did not have a license, but let her drive anyway. Pierce contends she informed Fincham on an earlier occasion that her daughter did not have a driver's license.
10. Numerous employees testified that they knew plaintiff did not have a driver's license, as it was usual for her to sit outside on the porch of the restaurant for long periods of time after her shift ended waiting for someone to drive her home. Further, plaintiff notified defendant in writing by virtue of her employment application that she did not have a driver's license.
11. Plaintiff changed clothes at her home and drove Fincham's car to return to work to finish her shift. On her way back, plaintiff was severely injured in an automobile accident, at which she was at fault, occurring at the intersection of U.S. Highway 301 and R.P. 2141 near Micro, North Carolina.
12. Plaintiff sustained significant injuries, and received extensive medical treatment reasonably necessary to affect a cure, provide relief and lessen her period of disability.
13. Defendant contends that the injuries sustained by plaintiff did not arise out of and in the course of her employment, as she was on a personal errand. Defendant also contends that plaintiff was not performing any mission or duty for Cracker Barrel at the time of the accident. Defendant relies on Fincham's testimony that plaintiff was not required to change clothes for business purposes, and that Fincham loaned his automobile to plaintiff as a personal favor. Defendant cites evidence that plaintiff was not paid for the trip to her home, and that she was not performing any job function at that time. Defendant specifically proffered Parker's testimony that she told plaintiff she needed to clock out before she left, although plaintiff did not, in fact, clock out prior to returning home.
14. The testimony that plaintiff was on a personal errand rather than the business of defendant is given little weight. Fincham's testimony that because plaintiff's vaginal discharge was not discernible to the naked eye, there was no business reason for her to leave defendant is not credible. As an employee of a public restaurant, sanitary food preparation dictated that plaintiff change into clothing that was not soiled with menstrual blood or a feminine discharge prior to handling food. Further, Parker testified that plaintiff would be expected to change her clothes after starting her period.
15. Fincham's testimony that defendant would permit an employee to continue food preparation under these conditions discredits the balance of Fincham's testimony that he asked plaintiff if she had a driver's license and understood that plaintiff was going to change clothes at her sister's home. Credible evidence also establishes that it was known that plaintiff would have to secure rides to work when defendant needed her to work a different shift for which her family could not provide transportation.
16. The evidence conclusively establishes that plaintiff honestly noted on her employment application at defendant that she did not have a valid driver's license.
17. The greater weight of the evidence establishes that plaintiff is an individual with cognitive limitations who prided her achievement of employment with defendant and who derived great self-esteem from her work. She was a highly dedicated employee. The convincing evidence establishes that plaintiff's personal hygiene required attention because of her work in food service at a time when defendant was short staffed. Unable to find a ride home and back to work, plaintiff approached Fincham and asked to use his car with the understanding and Fincham's desire that she would change clothes in order to return to work promptly. There is no credible evidence that Fincham would have provided plaintiff with transportation if she had decided to leave the restaurant for the day with no intent of returning to work.
18. Fincham's testimony that he loaned plaintiff his car with permission only to go to her sister's house is unconvincing. The greater weight of the evidence establishes only that plaintiff and Fincham discussed that plaintiff would return promptly and in a sanitary condition to continue her work.
19. The errand by plaintiff was undertaken to provide a direct benefit to defendant.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident arising out of and in the course and scope of her employment with defendant. N.C. Gen. Stat. § 97-2(6). Ordinarily, an injury suffered by an employee while going to or coming from work is not an injury arising out of and in the course of employment. Felton v. Hospital Guild of Thomasville, Inc.,57 N.C. App. 33, 34, 291 S.E.2d 158, 159 (1982). However, there is an exception to the general rule when the employee is on a special errand for the benefit of the employer. Osmond v. Carolina Concrete Specialties,151 N.C. App. 541, 568 S.E.2d 204 (2002). "[C]ompensability of a claim basically turns on whether or not the employee was acting to the benefit of his employer `to any appreciable extent' at the time of the accident."McBride v. Peony Corp., 84 N.C. App. 221, 227, 352 S.E.2d 236, 240
(1987) quoting Guest v. Iron Metal Co., 291 N.C. 448, 452, 85 S.E.2d 596,600 (1955). Plaintiff's errand appreciably benefited defendant.
2. Plaintiff was on an errand authorized by her superior to attend to her personal hygiene needs. In Harless v. Flynn 1 N.C. App. 448, 457
(1968), the court wrote: "In tending to his personal physical needs, an employee is indirectly benefiting his employer. Therefore, the course of employment continues when the employee . . . goes on a personal errand involving temporary absence from his post of duty."
3. As a result of the compensable injury, plaintiff is entitled to medical compensation as reasonably necessary to affect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. § 97-25. Defendant shall pay for needed relief so long as such medical treatments may reasonably be required. N.C. Gen. Stat. § 97-59.
4. As a result of the compensable injury, plaintiff has been temporarily totally disabled since November 7, 1999 and continuing. Plaintiff is entitled to temporary total disability compensation at the rate of $146.57 each week from November 7, 1999 and continuing until further order of the Industrial Commission. N.C. Gen. Stat. § 97-2(5).
5. Plaintiff's counsel is entitled to a reasonable attorney fee. A reasonable attorney fee in this action is twenty-five percent of the weekly disability benefits awarded. N.C. Gen. Stat. § 97-90.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee below, defendants shall pay plaintiff compensation for temporary total disability in the amount of $146.57 per week beginning November 7, 1999, and continuing until further order of the Industrial Commission. Accrued amounts to the date of this Award shall be paid to plaintiff in a lump sum subject to the attorney's fee below.
2. Defendant shall pay for all medical treatment incurred by plaintiff as a result of her November 6, 1999 accident that affects a cure, provides relief or lessens the period of disability.
3. Defendant shall pay plaintiff's counsel a reasonable attorney fee of twenty-five percent of the weekly disability compensation awarded to be paid as follows. Defendant shall pay plaintiff's attorney 25% of the accrued benefits owed plaintiff. Thereafter, defendant shall pay every fourth check directly to plaintiff's counsel.
4. Defendant shall pay costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER