NORMAN HATLEY, Employee, Plaintiff,
v.
CONTINENTAL GENERAL TIRE NA, Employer, Defendant.
No. COA09-971.
Court of Appeals of North Carolina.
Filed April 6, 2010
This case not for publication
The Sumwalt Law Firm, by Mart T. Sumwalt and Vernon Sumwalt, for plaintiff-appellee.
Smith Moore Leatherwood, LLP, by Jeri L. Whitfield, for defendant-appellant.
HUNTER, Robert C., Judge.
Continental General Tire NA ("defendant") appeals from an opinion and award of the North Carolina Industrial Commission entered 20 March 2009. After careful review, we affirm.

Background
The testimony and exhibits presented to the Industrial Commission tended to establish the following facts: At the time of Norman Hatley's ("plaintiff") 28 September 2005 injury, plaintiff was employed as a tire inspector with defendant. Plaintiff had worked for defendant since 1972 and earned an average weekly wage of $1,407.79. The physical requirements of his job required lifting, handling, inspecting, turning, pulling and spinning tires that weighed between 40 and 50 pounds. On the day of plaintiff's injury, 28 September 2005, a tire blew off the rim of a vehicle and forced plaintiff's hand into the metal housing above it. Immediately after the accident, plaintiff's entire left hand was bloodied and scratched and he had an obvious broken ring finger. Defendant filed a "Form 19" on the date of accident indicating plaintiff's version of events and plaintiff's contention that he broke one finger and damaged two others.
On 29 September 2005, plaintiff was examined by Dr. Pressley Gilbert ("Dr. Gilbert"). Dr. Gilbert's impression was that plaintiff suffered from a closed fracture of the distal phalanx of the left ring finger, with nail bed injury and contusion to the left long and ring fingers. That same day, plaintiff also saw Dr. David Baker ("Dr. Baker") at OrthoCarolina. Dr. Baker noted the fracture of the ring finger and swelling of the index and long fingers. Dr. Baker performed a closed manipulation of the distal phalanx and applied a splint. He released plaintiff to return to work on 3 October 2005 with restrictions of no work involving the use of the left hand. On 11 October 2005, plaintiff saw Dr. Baker for concerns about the PIP joints of the index and long fingers. Dr. Baker changed the splint for the ring finger and released plaintiff to return to work with restrictions of no lifting, pushing or pulling greater than one pound with the left hand. Defendant accommodated these restrictions and placed plaintiff in a separate light duty position.
Plaintiff next saw Dr. Baker on 15 November 2005 for continued swelling around the PIP joint of the ring finger and more diffuse stiffness and soreness in other fingers. Dr. Baker noted that plaintiff had some calcific density around the joint area, which was unrelated to plaintiff's injury. Dr. Baker authorized plaintiff to return to work with restrictions of no lifting, pushing or pulling greater than five pounds with the left hand. Plaintiff continued to work light duty in a different position with defendant. On 15 December 2005, Dr. Baker instructed plaintiff to continue with his prior restrictions until 2 January 2006. Dr. Baker released plaintiff to return to his regular duties for four hours a day on 2 January 2006, increasing to six hours a day on 9 January 2006, and eight hours a day by 16 January 2006.
When plaintiff returned to work as a tire inspector on a part-time basis on 2 January 2006, he worked the recommended number of hours and then worked the remaining hours in his light duty position. Plaintiff claimed that upon returning to full-duty employment he began having increased pain and swelling in his left hand. Plaintiff spoke to his foreman and to Tracy Boudreau ("Boudreau"), one of defendant's safety directors, about his problems, but he was informed that he either had to perform his regular job as a tire inspector or go out on disability under defendant's sickness and accident policy. Defendant's sickness and accident benefits policy with Hartford Insurance Company ("Hartford") was essentially a short-term disability policy and was available only for employees with non-work related injuries. Upon contacting Hartford, plaintiff was informed that he did not qualify for short term disability benefits under the policy because his injury was work related. Plaintiff was then told by his superiors that he must return to his regular duties or retire. Plaintiff opted to retire and submitted the appropriate forms on 9 February 2006.
Plaintiff continued treatment with Dr. Baker, but became dissatisfied because he felt that Dr. Baker did not appreciate the continued pain and swelling in his left hand. Plaintiff attempted to obtain a second medical opinion through the workers' compensation program, but his request was denied. Plaintiff then scheduled a second opinion through his group health coverage with Dr. John Gaul ("Dr. Gaul"), a colleague of Dr. Baker's at OrthoCarolina.
On 14 February 2006, plaintiff saw Dr. Baker, stating that he began having additional problems with his left hand about three weeks after he returned to his tire inspector duties. He also told Dr. Baker that he was scheduled to see Dr. Gaul the following day. Dr. Baker did not believe that plaintiff was at maximum medical improvement or that a rating was appropriate because of the significant symptoms that plaintiff was still experiencing. When Dr. Baker released plaintiff on 14 February 2006, he did not address the issue of restrictions in his office note. Subsequently, Vanessa Johnson, the medical case manager hired by defendant, requested Dr. Baker to address plaintiff's work restrictions. Dr. Baker then filled out a form that authorized plaintiff to return to work without restrictions.
On 15 February 2006, plaintiff began treatment with Dr. Gaul. Plaintiff complained primarily of soreness in the dorsal hand area, which Dr. Gaul described as broad and diffuse over the back of his left hand. According to his deposition testimony, Dr. Gaul did not have the 14 February 2006 note from Dr. Baker and assumed that plaintiff was still under restrictions. Dr. Gaul did not address the issue of restrictions in his 15 February 2006 note because he was not asked to do so and he did not think that it was relevant because plaintiff was not working. On 3 May 2006, Dr. Gaul completed a form indicating that plaintiff was unable to perform his regular job as a tire inspector and released plaintiff to return to work with restrictions of no lifting greater than ten pounds with his left hand.
On 18 October 2006, plaintiff saw Dr. Gaul for the last time for continued complaints of numbness and paresthesias in the left hand. Janet Gordon, a medical case manager, attended the appointment with plaintiff. Dr. Gaul was of the opinion that plaintiff was at maximum medical improvement and assigned a 15% impairment of the left hand, approximately half of which was for the stiffness to the ring finger and half of which was for stiffness to the index and long fingers. Dr. Gaul's rating did not take into consideration the calcific density noted by Dr. Baker, but addressed only those injuries that he felt were proximately caused by plaintiff's compensable injury.
Plaintiff received temporary partial disability benefits from 11 October 2005, the date he returned to work in a light duty position, until his retirement became effective on 19 February 2006. As a result of his compensable injury, plaintiff had work restrictions from his date of injury through the date of the Deputy Commissioner's hearing. Dr. Gaul testified that plaintiff had at least restrictions of no lifting greater than 20 pounds on a frequent basis and to avoid using impact tools with the left hand, heavy hammering, and similar activities throughout his treatment from 15 February 2006 to 18 October 2006.[1]
On 25 August 2006, plaintiff accepted a job as a teacher's assistant with the Gaston County school system that was within the restrictions imposed by Dr. Gaul. Plaintiff has been employed in that capacity since that time, earning an average weekly wage of $277.83.
Plaintiff claimed that he was entitled to temporary total disability benefits from 19 February 2006 to 24 August 2006, the time period during which he was not working. He further claimed that he was entitled to ongoing temporary partial disability beginning 25 August 2006 due to his significant wage decrease. Upon denial of these claims by defendant, plaintiff requested a hearing before the North Carolina Industrial Commission. The case was heard before the Commission on 28 January 2008. An opinion and award was issued on 20 February 2008, but due to a clerical error, the Commission reissued the opinion on 18 August 2008. In the opinion and award, Deputy Commissioner Robert Wayne Rideout, Jr. ordered defendant, inter alia, to pay the temporary total and temporary partial disability benefits requested by plaintiff. Defendant appealed to the Full Commission. On 20 March 2009, the Full Commission reached the same conclusion as Deputy Commissioner Rideout. Defendant now appeals the opinion and award of the Full Commission.

Analysis

I. Standard of Review
The standard of appellate review of an opinion and award of the Industrial Commission in a workers' compensation case is limited to determining "(1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." Clark v. Wal-Mart, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005). As the "Commission is the sole judge of the credibility of the witnesses and the weight of the evidence[,]" Hassell v. Onslow County Bd. of Educ., 362 N.C. 299, 305, 661 S.E.2d 709, 714 (2008), its findings are conclusive and binding on appeal "so long as there is some `evidence of substance which directly or by reasonable inference tends to support the findings, . . . even though there is evidence that would have supported a finding to the contrary[,]'" Shah v. Howard Johnson, 140 N.C. App. 58, 61-62, 535 S.E.2d 577, 580 (2000) (quoting Porterfield v. RPC Corp., 47 N.C. App. 140, 144, 266 S.E.2d 760, 762 (1980)), disc. review denied, 353 N.C. 381, 547 S.E.2d 17 (2001). The Commission's findings may be set aside on appeal only "when there is a complete lack of competent evidence to support them[.]" Young v. Hickory Business Furniture, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000). The Commission's conclusions of law are reviewed de novo on appeal. McRae v. Toastmaster, Inc., 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).

II. Apportionment
First, defendant argues that the Commission erred when it failed to determine whether plaintiff's disability could be apportioned since Dr. Baker noted that plaintiff's symptoms were due, in part, to an underlying calcific density in the joints that was unrelated to his compensable work injury.
Our Supreme Court has held that "[w]hile [our general statutes] make[] no express provision for apportionment of an award, there is nothing in the Act which prohibits the apportionment of an award where . . . only a portion of claimant's total disability is caused or contributed to by the compensable injury." Weaver v. Swedish Imports Maintenance, Inc., 319 N.C. 243, 253, 354 S.E.2d 477, 484 (1987).
However, even in such cases, apportionment is not proper where the evidence before the Commission renders an attempt at apportionment between work-related and non-work-related causes speculative, or where there is no evidence attributing a percentage of the claimant's total incapacity to her compensable injury, and a percentage to the non-compensable condition.
Counts v. Black & Decker Corp., 121 N.C. App. 387, 390-91, 465 S.E.2d 343, 346 (internal citations omitted), disc. review denied, 343 N.C. 305, 471 S.E.2d 68 (1996).
In the present case, none of plaintiff's treating physicians ever apportioned compensable versus non-compensable percentages to plaintiff's injury. While Dr. Baker found that plaintiff had some calcific density issues with regard to his left hand, the Commission specifically found, based on Dr. Gaul's medical records, that the 15% impairment rating did not take into consideration the calcific density noted by Dr. Baker, but addressed only those injuries that he felt were proximately caused by plaintiff's compensable injury. Defendant did not presented any evidence to refute this finding. Furthermore, in his deposition, Dr. Gaul stated that he was unable to apportion the work restrictions that he gave plaintiff in 2006. While there was some evidence that plaintiff suffered from non-compensable ailments to his left hand, there is no evidence to support apportionment of either his temporary total disability benefits or his temporary partial disability benefits.
In sum, based on the record presented to the Commission, any attempt to apportion plaintiff's injury would have been speculative and improper. Because there was no evidence to support apportionment of the award, plaintiff is entitled to full compensation. Id. at 391, 465 S.E.2d at 346.[2]

III. Temporary Total Disability Benefits
Next, defendant contends that the Commission erred in awarding temporary total disability benefits from 19 February 2006 until 25 August 2006 because plaintiff did not meet his burden of establishing that he was, in fact, disabled during that period.
To "obtain compensation under the Workers' Compensation Act, the claimant has the burden of proving the existence of his [or her] disability and its extent." Hendrix v. Linn-Corriher Corp., 317 N.C. 179, 185, 345 S.E.2d 374, 378 (1986). To support a conclusion of disability, the plaintiff must show that he or she is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment, and that the incapacity to earn is caused by plaintiff's injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982).
The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
Russell v. Lowes Product Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted). Here, plaintiff met his burden of producing evidence to satisfy the second prong of Russell from 19 February 2006 until 25 August 2006.
The Commission found that plaintiff was under work restrictions from 15 February 2006 to 18 October 2006 which prohibited, inter alia, the lifting of over 20 pounds on a frequent basis. Dr. Gaul placed plaintiff on this restricted duty. Contrary to Dr. Gaul's restrictions, Dr. Baker signed a form in which he released plaintiff to return to work without restrictions. The Commission was entitled to, and, in fact, did, give greater weight to Dr. Gaul's testimony regarding plaintiff's restricted duty. See Hassell, 362 N.C. at 305, 661 S.E.2d at 714 (the "Commission is the sole judge of the credibility of the witnesses and the weight of the evidence[.]").
It is undisputed that defendant did not offer plaintiff suitable employment in accordance with Dr. Gaul's restrictions and that plaintiff was capable of some work. The Commission made the following finding of fact with regard to plaintiff's attempt to locate other employment: "Plaintiff had difficulty finding employment due to his age, his limited work experience with defendant-employer, and his work restrictions. The Commission finds plaintiff made a reasonable job search, which was subsequently successful." We find that there was competent evidence to support the Commission's finding.
When he began his job search, plaintiff was around 56 years old and had worked for defendant for 33 years servicing tires. Due to his restrictions, he was unable to do the same type of work that he had been doing throughout his adult life. He had no experience working in an office setting and no supplemental training. Defendant did not offer plaintiff vocational rehabilitation services after his retirement to aid him in his search or assist him in obtaining training in a different field. Plaintiff testified at the hearing that he began looking for employment soon after he retired because he knew it would be difficult to find a position at his age. He checked the newspaper and contacted Gaston County to inquire about job openings, but he discovered that he was not qualified for very many of the available positions. Plaintiff could not recall how many positions he applied for, but inevitably he was hired by the Gaston County School System.
Based on the record, we hold that there was competent evidence to support the Commission's findings of fact, which support its conclusion of law, that plaintiff met his burden of proving that he was totally disabled under the second prong of Russell between 19 February 2006 and 25 August 2006 and was, therefore, entitled to temporary total disability benefits.

IV. Computation of Temporary Partial Disability Benefits
The Commission awarded plaintiff temporary partial disability benefits "at the rate of two-thirds of the difference between the average weekly wages plaintiff earned prior to the injury by accident and the diminished wages he was able to earn, beginning August 25, 2006, subject to the maximum compensation rate for 2005, for a maximum of 300 weeks from the date of injury or until he earns the same or greater wages . . . ."
First, defendant claims that the Commission incorrectly calculated plaintiff's average weekly wage. The Commission stated:
On August 25, 2006, plaintiff accepted a job as a teacher's assistant with the Gaston County school system that was within the restrictions imposed by Dr. Gaul. Plaintiff has been employed in that capacity since that time. In 2006, plaintiff earned income in the amount of $7,404.78 with the Gaston County school system. In 2007, he earned income in the amount of $12,202.40. Other than the wages he earned as a teacher's assistant with the Gaston County school system, plaintiff has not earned any wages since he stopped work with defendants. From August 25, 2006 through the end of 2007, plaintiff's average earnings as a teacher's assistant with the Gaston County school system were $277.83 per week.
There is no miscalculation that we can ascertain. It is clear that the Commission took plaintiff's total earnings in 2006 and 2007, which was a total of $19,607.18, and divided that amount by the number of weeks that plaintiff had been working, which was approximately 70.57258 weeks between 25 August 2006 and 31 December 2007. The result of these calculations is $277.83. Though the Commission did not detail its calculations, we are nevertheless able to ascertain its methodology.
Second, defendant argues that plaintiff's current average weekly wage should be increased, thereby reducing the amount of benefits paid, because he does not work 52 weeks per year. Defendant's argument is without merit. The Commission's method was in accord with Conyers v. New Hanover County Schools, 188 N.C. App. 253, 261, 654 S.E.2d 745, 751 (2008), which held that the average weekly wage of an injured school employee who worked 40 weeks per year should be calculated by dividing her income by the full 52 weeks in the year. While Conyers dealt with pre-accident average weekly wage calculations, the case is instructive with regard to post-accident average weekly wage calculations for school employees. Here, it appears that the Commission based its calculation on the fact that there are 52 weeks between 25 August 2006 and 25 August 2007. There was also an additional 18 weeks, more or less, between 25 August 2007 and 31 December 2007. The result is roughly 70 weeks, which is what the Commission used to divide plaintiff's total income.
Third, defendant claims that while plaintiff was working for defendant he worked significant overtime and therefore his average weekly wage was higher than if he had been working a 40-hour work week. Defendant suggests that the Commission did not take this into account when calculating plaintiff's present average weekly wage. This argument is illogical. After his injury, plaintiff was not capable of returning to his position with defendant in which he earned an average of $1,407.79 per week. He found a new job within his light duty restrictions where he earned significantly less money. Defendant is responsible for temporary partial disability benefits to compensate plaintiff for that difference. There is no method set out in case law or statute by which the Commission may reduce benefits simply because the injured employee no longer works overtime.
Finally, defendant claims that plaintiff may have found a job in which he could have earned higher wages, but he took the job with Gaston County because of the health insurance benefits it offered. In this State, the defendant employer bears the burden of proving that an employee could have obtained higher earnings. See Osmond v. Carolina Concrete Specialties, 151 N.C. App. 541, 546, 568 S.E.2d 204, 207-08 (2002) (citing Larramore v. Richardson Sports Ltd. Partners, 141 N.C. App. 250, 259-60, 540 S.E.2d 768, 773 (2000), aff'd per curiam, 353 N.C. 520, 546 S.E.2d 87 (2001)). Defendant has not met this burden. There is no evidence that plaintiff had any other options available to him. He began looking for a job immediately after retiring and took the only position that was offered to him. Defendant did not attempt to offer any contradictory evidence. In sum, we hold that the Commission properly calculated plaintiff's post-injury average weekly wage.

Conclusion
Based on the foregoing, we hold that the Commission was not required to apportion plaintiff's benefits; the Commission properly awarded plaintiff temporary total disability benefits from 19 February 2006 to 25 August 2006; and the Commission properly awarded temporary partial disability benefits beginning on 25 August 2006.
Affirmed.
Judges BRYANT and JACKSON concur.
Report per Rule 30(e).
NOTES
[1] As will be discussed infra, the Commission gave greater weight to the testimony of Dr. Gaul than to that of Dr. Baker and found that plaintiff was under work restrictions from 15 February 2006 to 18 October 2006.
[2] On several occasions in its brief, defendant mentions the fact that plaintiff voluntarily retired. This fact is irrelevant to the determinations in this case. See Heffner v. Cone Mills Corp., 83 N.C. App. 84, 88, 349 S.E.2d 70, 74 (1986) ("Because disability measures an employee's present ability to earn wages, and is unrelated to a decision to withdraw from the labor force by retirement, the Commission may not deny disability benefits because the claimant retired where there is evidence of diminished earning capacity caused by an occupational disease. So long as the disease has, in some way, diminished the employee's ability to earn wages, he may recover disability compensation.") (internal citations omitted).