***********
Upon review of the competent evidence of record, with reference to the errors assigned, and having considered the additional evidence and supplemental briefs presented by the parties since reopening the case on the average weekly wage issue, the Full Commission affirms the *Page 2 
Opinion and Award of the Deputy Commissioner, with minor modifications, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction over these proceedings.
2. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. The parties are properly designated, and there is no question as to the mis-joinder or the non-joinder of any party.
4. Plaintiff sustained a compensable work injury on February 9, 2006 when an assailant stabbed and struck him on the head during an assault.
5. An employment relationship existed between the parties at all times relevant to these proceedings.
6. Defendant is a duly qualified self-insured employer. Brentwood Services is the servicing agent for this claim.
7. Since February 10, 2006, defendant has been paying plaintiff at a compensation rate of $161.84, based upon an average weekly wage of $242.76, pursuant to a Form 60. Plaintiff disputes this average weekly wage calculation as unfair and unjust pursuant to N.C. Gen. Stat. § 97-2(5). *Page 3 
8. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One (1) — Pre-Trial Agreement;
 b. Stipulated Exhibit Two (2) — North Carolina Industrial Commission forms and filings;
 c. Stipulated Exhibit Three (3) — Plaintiff's medical records;
 d. Plaintiff's Exhibit One (1) — Relief manager description.
 *********** ISSUES
The issues to be determined are:
1. Whether plaintiff's current psychological condition is causally related to his February 9, 2006 work injury?
2. Whether plaintiff is entitled to attend a partial hospitalization program at Holly Hill Hospital in Raleigh, North Carolina?
3. How should plaintiff's average weekly wage be calculated under N.C. Gen. Stat. § 97-2(5)?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 26 years old and has a tenth (10th) grade education. Except for a two (2) month period when plaintiff worked at Food Lion, he worked as a cook and sous chef in *Page 4 
restaurants since age 18. Prior to the work injury which is the subject of these proceedings, plaintiff enjoyed an active lifestyle and never had any mental health problems or treatment.
2. Plaintiff started working at defendant's Fuquay-Varina, North Carolina restaurant in July 2005. Defendant hired plaintiff as a full-time grill operator, which required him to cook food and handle the cooking area. Plaintiff originally made $6.50 per hour, and received a raise to $6.85 per hour within a few months. Plaintiff had an excellent attendance record and work habits, and often received compliments on his work by his supervisors and co-workers.
3. The evidence is disputed concerning whether plaintiff was being trained as a relief manager. Prior to the work injury which is the subject of these proceedings, plaintiff's supervisors discussed promoting him to unit (or relief) manager, but he did not complete a formal application. However, plaintiff did receive instructions on how to take inventory, make bank deposits, and conduct cash audits, along with access to the computer containing financial information, which is only accessed by managers. Plaintiff also received a description of the relief manager's duties from his district manager, Mr. Mitchell Duke. At the initial review of this case, the Full Commission was unable to reconcile the vast discrepancy in the wage testimony, and therefore reopened the record for additional evidence from which to fairly determine plaintiff's average weekly wage.
4. According to Mr. Corey Golden, an area vice-president for defendant who oversees the restaurant at which plaintiff worked, and who is not related to plaintiff, there is no official position of relief manager with defendant. However, as a matter of unofficial policy, restaurant managers do designate certain employees as relief managers in order to temporarily assume the duties of manager when the manager is absent. Mr. Golden explained that a relief manager is typically selected each time the manager will be absent; that there is no guarantee the *Page 5 
same relief manager will be selected each time; that normally, a single relief manager would only be needed to for a maximum of two (2) days, due to scheduling and work rotation; and that relief managers are only needed for the first (1st) shift. Thus, the relief manager position would be a very limited position for only short periods of time. Further, Mr. Golden explained that a relief manager position did not come with a pay increase, and that during the time of plaintiff's employment, relief managers could be paid an extra $5.00 to $10.00 per shift as an incentive, at the discretion of the district manager, although such practice is currently no longer in effect.
5. With respect to defendant's general wage and promotion practices for grill operators, apart from the relief manager position, Mr. Golden explained that there are three (3) different types of grill operator positions — grill operator, master grill operator, and super master grill operator. A grill operator can earn up to $7.99 per hour, a master grill operator can earn up to $8.50 per hour, and a super master grill operator can earn $9.00 or more per hour. According to Mr. Golden, promotions to master or super master grill operator are based upon proficiency in the kitchen, customer service, and other performance that is observed by the managers. Employees who remain regular grill operators may also receive raises based upon performance, professionalism, reliability, and trustworthiness. Mr. Golden agreed that, based upon his experience in determining wages, it was "likely" that plaintiff would have received additional pay raises if he continued to work for defendant.
6. Mr. Duke also testified that the relief manager position did not come with a pay increase. According to Mr. Duke, prior to plaintiff's February 9, 2006 work injury, he talked to plaintiff about the possibility of becoming a relief manager as a result of plaintiff inquiring about how he could be promoted in the company. In addition, Mr. Duke provided plaintiff with a handwritten paper setting forth the various daily duties of a relief manager. However, Mr. Duke *Page 6 
testified that he never provided any training to plaintiff as a relief manager, plaintiff never worked as a relief manager, and he never asked plaintiff to make any bank deposits. The Full Commission does not find the testimony of Mr. Duke to be entirely credible. The Full Commission finds based upon the greater weight of the evidence that prior to his work related stabbing injury, plaintiff was being trained as a relief manager. The Full Commission further finds that if plaintiff had not been injured, it is likely that he would have become a relief manager in the near future.
7. Plaintiff and Ms. Ann Duncan, a relief manager for defendant, testified that plaintiff would have initially earned $22,000.00 annually as a relief manager. However, Ms. Duncan also testified that she resigned her employment with defendant because she never received a pay increase, although she took on the additional responsibilities of being a relief manager, which is consistent with the testimony of Mr. Golden.
8. On August 13, 2009, defendant produced documents pursuant to discovery requests indicating that it currently employs two (2) persons as relief managers in the State of North Carolina. The relief manager with the most seniority, having worked for defendant for over 12 years and attained the title of super master grill operator, earns $9.00 per hour, while the other relief manager is a master grill operator and salesperson with less than three (3) years of service with defendant, and earns $8.99 per hour. The Full Commission finds that these employees are not similar enough to plaintiff in order to use their wages as a basis for an average weekly wage calculation. The three (3) year employee was only earning a little more per hour as a relief manager than he could earn as a master grill operator.
9. At the time of the work injury which is the subject of these proceedings, plaintiff had been working for defendant for approximately seven (7) months, and his title was grill *Page 7 
operator, although he was being trained as a relief manager. Plaintiff was earning $6.85 per hour. The evidence is insufficient to prove that plaintiff would have been a full-time relief manager or what his earnings would have initially been as a relief manager but for his work injury.
10. In calculating plaintiff's average weekly wage, methods one (1) and two (2) under N.C. Gen. Stat. § 97-2(5) would not apply, as plaintiff worked for defendant for less than 52 weeks. Method three (3), which divides plaintiff's earnings by the number of weeks or parts thereof worked, would not be fair and just to both parties since plaintiff's period of employment covered a span of 31 weeks, but he missed more than seven (7) consecutive days from work during one period of his employment. The Full Commission finds that the evidence is insufficient to utilize the wages of a relief manager to show wages of a comparable employee under method four (4), as the evidence is insufficient to prove that plaintiff would have been a full-time relief manager or what his earnings would have initially been as a relief manager but for his work injury. Therefore, method five (5), calculating plaintiff's average weekly wage by dividing actual earnings by the number of weeks worked, after subtracting the one period where he missed more than seven (7) consecutive days, would be fair and just to both parties. Under this method, plaintiff's earnings of $7,282.54 divided by 30 weeks yields an average weekly wage of $242.76.
11. On February 9, 2006, plaintiff went in to work at defendant's Fuquay-Varina restaurant, but was called over to the Garner, North Carolina restaurant by Mr. Duke. The Garner restaurant manager left that position just a few days before, and Mr. Duke, who took over the manager's duties, had just terminated an employee at that location on that day, and needed plaintiff's assistance in the aftermath. Plaintiff arrived and started running the grill operation. *Page 8 
Shortly thereafter, the boyfriend of the terminated employee came into the store and threatened Mr. Duke. The assailant walked behind the counter toward Mr. Duke. Plaintiff placed himself between Mr. Duke and the assailant and attempted to calm down the assailant. The assailant hit plaintiff on his head twice with a frying pan or teapot. Plaintiff still tried to restrain the assailant despite the disparity in their sizes. At the time, plaintiff was five (5) feet, six (6) inches tall, and weighed 150 pounds, whereas the assailant was over six (6) feet tall and weighed approximately 250 pounds.
12. Dazed by the head trauma plaintiff sustained, he nonetheless tried to stop the assailant, who pushed him into another room. The assailant stabbed plaintiff with a knife on his right upper shoulder, near his throat. The assailant then held the blade to plaintiff's throat before releasing him. Bleeding profusely from the wound, plaintiff thought that he was going to die. After bystanders tried to stop the bleeding, an ambulance rushed plaintiff to WakeMed, where he underwent surgery in order to stop the bleeding from his shoulder and to repair the lacerations on his face. Thereafter, plaintiff underwent physical therapy in order to restore strength and motion in his right arm. Plaintiff is right hand dominant.
13. Plaintiff was still experiencing a great deal of pain in his neck and shoulder in April 2006, and so he began treating with Dr. Robert Wyker, an orthopaedist. Dr. Wyker ordered an MRI and nerve conduction studies. These diagnostic procedures did not identify the source of plaintiff's pain. Dr. Wyker prescribed more physical therapy and cortisone injections. These treatments did not resolve plaintiff's pain. Dr. Wyker found no reason to doubt plaintiff's complaints about pain, and he saw no indication that plaintiff was being untruthful regarding his level of pain. *Page 9 
14. Following plaintiff's surgery, he began to experience severe emotional distress. At the time of plaintiff's suture removal on February 23, 2006, he requested a referral to a psychologist because of his symptoms, and received a referral to Wake County Mental Health in Raleigh, North Carolina. Plaintiff suffered from frequent nightmares, spontaneous outbursts of anger, and had flashbacks when recalling the stabbing. Plaintiff also had difficulty sleeping, felt paranoid, and was extremely anxious. Plaintiff did not exhibit any of these behaviors prior to the February 9, 2006 work injury.
15. Following months of severe psychological symptoms, defendant sent plaintiff to Dr. Lisë Osvold, a psychologist who was then practicing at Pembroke Psychological Services in Raleigh, North Carolina. Beginning on June 22, 2006, Dr. Osvold saw plaintiff a total of nine (9) times for her initial evaluation. Dr. Osvold also spoke to plaintiff's ex-girlfriend, his father, and a co-worker. Dr. Osvold diagnosed plaintiff with chronic post-traumatic stress disorder and depressive disorder as a result of the February 6, 2006 work injury. According to Dr. Osvold, plaintiff's condition met all of the indicia of post-traumatic stress disorder and major depression. Dr. Osvold rejected a diagnosis of malingering based upon her thorough experience with plaintiff and the corroborating information provided by several other people.
16. Dr. Osvold began treatment of plaintiff on a weekly basis on September 14, 2006, providing therapy and using cognitive behaviorism treatments. Dr. Osvold's treatment helped plaintiff, and he made some improvement. The Full Commission finds that Dr. Osvold's treatment was reasonably necessary in order to ameliorate the effects of plaintiff's February 6, 2006 work injury, but is not sufficient to meet all of the treatment needs of plaintiff.
17. On April 6, 2007, Dr. Osvold recommended that plaintiff participate in the partial hospitalization program at Holly Hill Hospital in Raleigh, North Carolina because he requires *Page 10 
more intensive treatment than can be provided in weekly therapy sessions. Dr. Osvold restated her recommendation on July 9, 2007 and September 4, 2007. Dr. Osvold is of the opinion that this recommended intensive treatment at Holly Hill Hospital is reasonably necessary in order to treat plaintiff's conditions caused by his February 6, 2006 work injury.
18. In 2006, Dr. Osvold recommended psychiatric treatment for plaintiff, and defendant approved treatment by Dr. Lawrence A. Dunn, a psychiatrist and specialist in chronic pain. Prior to entering private practice, Dr. Dunn practiced for 17 years at Duke University Medical Center and the Durham Veterans Administration Medical Center, both in Durham, North Carolina. Dr. Dunn has experience treating many patients with post-traumatic stress disorder and chronic pain.
19. On November 13, 2006, plaintiff began seeing Dr. Dunn on a bi-weekly basis, and plaintiff continues to seek treatment from Dr. Dunn. Dr. Dunn diagnosed plaintiff with post-traumatic stress disorder, depressive disorder, and chronic pain syndrome. Dr. Dunn initially treated plaintiff with anti-depressants and sleep medications, but then instituted pain medications in order to address plaintiff's chronic pain and other medications to treat plaintiff's post-traumatic stress disorder. Dr. Dunn did not find plaintiff to be malingering, and found him instead to be credible and consistent in his complaints. Dr. Dunn also conducted a urine toxicology test and found no evidence that plaintiff was abusing either illegal drugs or his prescribed medications.
20. The Full Commission finds that Dr. Dunn's treatment was reasonably and medically necessary in order to provide relief and lessen plaintiff's disability. Because of Dr. Dunn's treatment, plaintiff has been sleeping better and having fewer nightmares, angry outbursts, and paranoid thoughts. Plaintiff's activities are also now less limited by pain. Dr. Dunn *Page 11 
is of the opinion that plaintiff is totally unable to work due to his psychiatric conditions that resulted from the February 9, 2006 work injury.
21. Dr. Dunn agrees with Dr. Osvold's recommendation for intensive treatment at Holly Hill Hospital. It was Dr. Dunn's opinion that such intensive treatment at Holly Hill Hospital would be beneficial because more intensive care would give plaintiff a better chance of regaining function. Defendant refused to authorize the intensive treatment at Holly Hill Hospital recommended by Dr. Osvold and Dr. Dunn. Plaintiff filed a motion to compel this treatment, which the Executive Secretary's office denied on the grounds that this issue would be more appropriately addressed before a Deputy Commissioner.
22. On November 1, 2006, defendant sent plaintiff to Dr. Verne Schmickley, a psychologist, for an independent psychological evaluation. Dr. Schmickley met with plaintiff for a single session. Dr. Schmickley agreed with the diagnoses of post-traumatic stress disorder and depressive disorder, but felt that plaintiff was malingering because his presentation was so extreme. In addition, Dr. Schmickley did not find plaintiff to be disabled.
23. Defendant sent plaintiff to Dr. Thomas Gualtieri, a psychiatrist specializing in neuropsychiatry, for an independent psychiatric evaluation. Contrary to the findings of the other experts, Dr. Gualtieri did not diagnose plaintiff with post-traumatic stress disorder. Rather, Dr. Gualtieri focused on the possibility that plaintiff was abusing drugs or alcohol. Dr. Osvold testified that she did not believe plaintiff was abusing drugs or alcohol, although she was aware that there were several occasions after the February 9, 2006 work injury when plaintiff did abuse alcohol. However, Dr. Osvold was of the opinion, and the Full Commission so finds, that plaintiff eventually stopped abusing alcohol. *Page 12 
24. Greater weight is given to the opinion testimony of Dr. Osvold and Dr. Dunn, as plaintiff's authorized psychological and psychiatric treatment providers, than to the contrary opinions of Dr. Schmickley and Dr. Gualtieri, who each saw plaintiff on a single occasion for an independent psychological/psychiatric evaluation. Dr. Osvold reviewed the reports of Dr. Schmickley and Dr. Gualtieri, and was aware of the areas where their opinions differed from her opinions when she testified at her deposition. Dr. Osvold felt that she was in a better position to know plaintiff's condition than Dr. Schmickley or Dr. Gualtieri. Dr. Dunn also reviewed the reports of Dr. Schmickley and Dr. Gualtieri, and was aware of the areas where their opinions differed from his opinions when he testified at his deposition. Likewise, Dr. Dunn felt that he was in a better position to evaluate plaintiff than Dr. Schmickley or Dr. Gualtieri due to the advantages he gained from spending more treatment time with plaintiff. At his deposition, Dr. Dunn continued to agree with the opinions he expressed in his September 9, 2007 "To Whom It May Concern" correspondence.
25. Based upon the opinions of Dr. Osvold and Dr. Dunn and the other competent and credible evidence of record, the Full Commission finds as fact that plaintiff has post-traumatic stress disorder, depressive disorder, and chronic pain syndrome, and that plaintiff's psychological conditions and his chronic pain syndrome are causally related to his February 9, 2006 work injury. The Full Commission further finds as fact that plaintiff is totally unable to work in any capacity due to his psychological conditions and his chronic pain syndrome that resulted from the February 9, 2006 work injury.
26. The Full Commission further finds as fact that the intensive treatment at Holly Hill Hospital recommended by Dr. Osvold and Dr. Dunn is reasonably necessary in order to treat plaintiff's psychological conditions caused by his February 9, 2006 work injury. *Page 13 
27. Defendant brought this appeal before the Full Commission, and the Full Commission by its decision herein is ordering defendant to provide the medical compensation ordered by the Deputy Commissioner. Plaintiff requested that attorney's fees be ordered as part of the bill of costs under N.C. Gen. Stat. § 97-88.
28. Defendant did not file a motion to stay the decision of the Deputy Commissioner pending appeal to the Full Commission. Plaintiff filed a motion to show cause and for immediate medical treatment. The Full Commission finds that defendant is obligated to provide the recommended medical treatment at Holly Hill Hospital.
29. Plaintiff shall pay his share of the mediator's fee.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On February 9, 2006, plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the evidence of record establishes a causal relationship between plaintiff's February 9, 2006 work injury and his psychological condition and chronic pain syndrome, and thus these conditions are compensable. Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory BusinessFurniture, 353 N.C. 227, 538 S.E.2d 912 (2000).
3. As a result of plaintiff's February 9, 2006 work injury, he is entitled to temporary total disability compensation from February 9, 2006 and continuing until further Order of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-29. *Page 14 
4. N.C. Gen. Stat. § 97-2(5) sets forth in priority sequence the five (5) methods by which a plaintiff's average weekly wage is to be calculated in workers' compensation matters, and method one (1), which entails calculating the total wages of the plaintiff for the 52 weeks of employment preceding the work injury and dividing that sum by 52, is to be the primary method. N.C. Gen. Stat. § 97-2(5); McAninch v. Buncombe CitySchools, 347 N.C. 126, 489 S.E.2d 375 (1997); Bond v. FosterMasonry, Inc., 139 N.C. App. 123, 532 S.E.2d 583 (2000). Although method one (1) is given preference, it cannot be used when the plaintiff has been working for fewer than 52 weeks in the year preceding the work injury. Conyers v. New Hanover CountySchools, 188 N.C. App. 253, 654 S.E.2d 745 (2008). Further, it is the clear intention of the North Carolina Workers' Compensation Act to calculate an average weekly wage that is fair and just to both parties. Id.
5. In the case at bar, methods one (1) through four (4) under N.C. Gen. Stat. § 97-2(5) cannot be used for the reasons set forth above. Applying method five (5) under N.C. Gen. Stat. § 97-2(5), plaintiff worked a span of 31 weeks for defendant, but missed more than seven (7) consecutive days during a period and earned a gross income of $7,282.54. Dividing his earnings by 30 weeks yields an average weekly wage of $242.76, and a corresponding compensation rate of $161.84. N.C. Gen. Stat. § 97-2(5); McAninch,347 N.C. 126, 489 S.E.2d 375 (1997); Conyers,188 N.C. App. 253, 654 S.E.2d 745 (2008); Bond,139 N.C. App. 123, 532 S.E.2d 583 (2000).
6. As a result of plaintiff's February 9, 2006 work injury, plaintiff is entitled to have defendant pay for all medical/psychological treatment reasonably related to this work injury, including, but not limited to the intensive treatment at Holly Hill Hospital recommended by *Page 15 
Dr. Lisë Osvold and Dr. Lawrence A. Dunn and/or other treatment as recommended by Dr. Osvold or Dr. Dunn. N.C. Gen. Stat. §§ 97-2(19), 97-25.
7. Plaintiff is entitled to attorney's fees under N.C. Gen. Stat. § 97-88. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $161.84 per week from February 9, 2006 and continuing until further order of the North Carolina Industrial Commission. Any accrued compensation shall be paid in a lump sum. Defendants are allowed a credit for compensation already paid.
2. Defendant shall pay all medical and psychological expenses incurred or to be incurred as a result of plaintiff's February 9, 2006 work injury, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen his period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act. Defendant shall immediately authorize, arrange, and pay for the intensive treatment at Holly Hill Hospital recommended by Dr. Lisë Osvold and Dr. Lawrence A. Dunn.
3. Dr. Dunn shall remain plaintiff's authorized treating physician and Dr. Osvold shall remain plaintiff's authorized treating psychologist.
4. A reasonable attorney's fee of 25 percent is hereby approved for plaintiff's counsel from the sums due plaintiff under paragraph one (1), above. Defendant shall deduct and *Page 16 
pay directly to plaintiff's counsel 25 percent of any accrued compensation owed to plaintiff and every fourth (4th) check thereafter.
5. Plaintiff shall pay half of the mediation fee in this matter from any future settlement on a form agreement or by compromise settlement agreement.
6. Defendant shall pay to plaintiff attorney fees under N.C. Gen. Stat. § 97-88. Plaintiff's counsel shall submit an affidavit setting forth the time expended in defending this appeal to the Full Commission, her usual hourly rate, and level of experience within 10 days of the date of the filing of this Opinion and Award.
7. Defendant shall pay the costs of these proceedings.
This the ___ day of March 2010.
 S/___________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER
COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1