DEBRA CONYERS, Employee-Plaintiff v. NEW HANOVER COUNTY SCHOOLS, Employer, SELF-INSURED (KEY RISK MANAGEMENT SERVICES, Third Party Administrator), Defendant

No. COA07-53

(Filed 15 January 2008)

## Workers' Compensation— calculation of average weekly wage— public school employee—exceptional reasons method

The Industrial Commission erred by calculating plaintiff public school employee's average weekly wage under N.C.G.S. § 97-2(5), and the decision is reversed and remanded for entry of an award in accordance with this opinion, because: (1) the record contained uncontradicted evidence that plaintiff drove a bus for 10 months out of the year, was paid for 10 months of work, received her paycheck 10 times a year, and did not work or get paid during the summer when school was out; (2) defendant was not obligated to compensate plaintiff during the summer months nor was plaintiff obligated to work for defendant during those months, and thus her average weekly wage could not be computed under the first method set out in N.C.G.S. § 97-2(5); (3) the third method was not appropriate when the inquiry required by the statute is whether the results obtained are fair and just to both parties, and plaintiff's yearly salary would be $4,962.70 more than her actual pre-injury wages; (3) the fifth method, utilized subsequent to a finding that the previous methods are either inapplicable or were applicable but would fail to produce results fair and just to both parties, should have been used since plaintiff was

essentially a seasonal worker who only worked during the school year; and (4) the language of the fifth calculation method neither requires nor prohibits any specific mathematical formula from being applied, the compensation plaintiff collects for workers' compensation will be paid every week including the summer, and thus plaintiff's average weekly wages should be calculated by dividing the wages she earned in the 52-week period prior to her accident by 52, the number of weeks in the year, yielding an average weekly wage of $338.63.

Appeal by Defendant from Opinion and Award entered 1 September 2006 by the North Carolina Industrial Commission. Heard in the Court of Appeals 29 August 2007.

*Brumbaugh, Mu & King, by Maggie S. Bennington, for Plaintiff.*

*Attorney General Roy Cooper, by Assistant Attorney General Vanessa N. Totten, for Defendant.*

STEPHENS, Judge.

The sole issue to be addressed in this appeal is what method under N.C. Gen. Stat. § 97-2(5) should be used to calculate a public school employee's "average weekly wages" for the payment of workers' compensation benefits. Defendant contends the Full Commission erred in calculating Plaintiff's average weekly wages under N.C. Gen. Stat. § 97-2(5). For the reasons stated below, we reverse the Full Commission and remand for entry of an Award in accordance with this opinion.

## I. FACTS AND PROCEDURE

Plaintiff-Appellee Debra Conyers ("Plaintiff") was employed by Defendant-Appellant New Hanover County Schools ("Defendant") as a bus driver. She had held this job for approximately 12 years prior to sustaining a compensable injury on 30 October 2001. Plaintiff drove a school bus during the school year and was not employed during the summertime. She earned $10.90 per hour, approximately $436 per week. She received her paycheck monthly after each month worked, receiving no paychecks during the summer months. Plaintiff earned a total of $17,608.94 in the 52 weeks preceding the accident.

On 12 March 2004, Plaintiff filed a Form 33 Request for Hearing, claiming entitlement to workers' compensation benefits for past,·

present, and future disability; medical benefits; attorneys' fees; and costs as a result of her injury. Plaintiff's claim was heard by Deputy Commissioner Phillip Holmes on 31 March 2005. In an Opinion and Award filed 13 December 2005, Deputy Commissioner Holmes found that the first method described by N.C. Gen. Stat. § 97-2(5) should be used to calculate Plaintiff's average weekly wages, and thus concluded that Plaintiff's average weekly wages were $338.63.

Plaintiff appealed to the Full Commission, and the appeal was heard on 8 June 2006. By Opinion and Award filed 1 September 2006, the Full Commission reversed the decision of Deputy Commissioner Holmes, concluding that Plaintiff's correct average weekly wages were best determined by using the third method of N.C. Gen. Stat. § 97-2(5), thereby establishing average weekly wages of $434.07.

From this Opinion and Award, Defendant appeals.

## II. DISCUSSION

Appellate review of an Opinion and Award of the Full Commission is limited to a determination of whether the Full Commission's findings of fact are supported by any competent evidence, and whether those findings support the Full Commission's legal conclusions. *Adams v. AVX Corp.*, 349 N.C. 676, 509 S.E.2d 411 (1998), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). The Full Commission's conclusions of law are reviewable *de novo*. *Whitfield v. Lab. Corp. of Am.*, 158 N.C. App. 341, 581 S.E.2d 778 (2003).

In North Carolina, the calculation of an injured employee's average weekly wages is governed by N.C. Gen. Stat. § 97-2(5). The statute sets forth five methods, in order of preference, by which an injured employee's average weekly wages are to be computed. *Hensley v. Caswell Action Comm., Inc.*, 296 N.C. 527, 251 S.E.2d 399 (1979). The statute, as it pertains to this case, provides:

[Method 1] "Average weekly wages" shall mean earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, . . . divided by 52 . . . .

. . . .

[Method 3] Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be fol-

lowed; provided, results fair and just to both parties will be thereby obtained. . . .

. . . .

[Method 5] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

N.C. Gen. Stat. § 97-2(5) (2001).

The dominant intent of this statute is to obtain results that are fair and just to both employer and employee. *Joyner v. A. J. Carey Oil Co.*, 266 N.C. 519, 146 S.E.2d 447 (1966). Results fair and just within the meaning of the statute "consist of such 'average weekly wages' as will most nearly approximate the amount which the injured employee *would be earning* were it not for the injury, in the employment in which he was working at the time of his injury." *Liles v. Faulkner Neon & Elec. Co.*, 244 N.C. 653, 660, 94 S.E.2d 790, 795-96 (1956).

Defendant argues the Full Commission erred in calculating Plaintiff's average weekly wages using the third method defined in N.C. Gen. Stat. § 97-2(5). Specifically, Defendant contends there is insufficient evidence to support the following findings of fact:

9. The Form 22 reflects total wages of $17,608.94 in the fifty-two weeks preceding [P]laintiff's October 30, 2001 injury. However, as [P]laintiff did not work continuously during the fifty-two week period, methods one and two for computing average weekly wage cannot be used. Using method three, dividing the amount earned by the number of weeks actually worked, [P]laintiff's average weekly wage is $434.07, and her compensation rate is $289.40.

10. Use of the third method to calculate [P]laintiff's average weekly wage produces the most fair and just results for the parties.

As Defendant points out, Plaintiff was a full-time employee with New Hanover County Schools and had been continuously employed by the school system for 12 years before the injury. Thus, according to Defendant, the mandatory method to use in this case is the first method whereby Plaintiff's yearly earnings of $17,608.94 are divided by 52, for an average weekly wage of $338.63. Furthermore, Defendant contends there is no evidence in the record to support the

finding that the third method would produce the most fair and just results for the parties. Defendant argues that use of the third method yields an unfair and unjust result as Plaintiff's yearly salary under this method would be $22,571.64, $4,962.70 more than she had actually earned in the year before she was injured.

Plaintiff contends that, as an employee of the New Hanover County Schools, she only worked 279 days in the year prior to her accident. Since her employment did not extend over the preceding 52-week period, she argues the Full Commission properly used the third method of N.C. Gen. Stat. § 97-2(5) to determine her average weekly wages.

Our research reveals only one case in which the North Carolina appellate courts have addressed the issue of whether a public school employee's average weekly wages should be calculated with or without regard to the 10 week summer vacation period. In *McAninch v. Buncombe Cty. Sch.*, 122 N.C. App. 679, 471 S.E.2d 441 (1996), *rev'd*, 347 N.C. 126, 489 S.E.2d 375 (1997), the plaintiff-employee, a cafeteria worker whose position only existed during the school year, worked 42 weeks per year for the defendant-employer. The Full Commission determined the plaintiff's average weekly wages using the third method of N.C. Gen. Stat. § 97-2(5), by dividing her earnings during her 42-week work period by the 42 weeks she had worked. This Court reversed the Full Commission, concluding that the plaintiff's average weekly wages should have been calculated under the fifth method of N.C. Gen. Stat. § 97-2(5), by dividing the plaintiff's total wages earned in the 52 weeks prior to the accident by 52. *McAninch*, 347 N.C. 126, 489 S.E.2d 375. However, on writ of certiorari, our Supreme Court held that this Court had no authority to recalculate the plaintiff's wages, because the defendant and the plaintiff had entered into a Form 21 agreement for compensation[1] which was approved by the Commission. *Id.*[2] The Supreme Court ruled that the Form 21 agreement could not be modified or set aside on appellate review "where there [was] no finding [by the Commission] that the agreement itself was obtained by fraud, misrepresentation, mutual mistake, or undue influence[.]" *Id.* at 132, 489 S.E.2d at 379 (quotation marks and citation omitted). The Supreme Court further stated that "[w]here the employer and employee have entered into a Form 21

---

1. The Form 21 agreement specified average weekly wages of $163.37, reflecting the plaintiff's annual salary divided by the 42 weeks she actually worked.

2. A second issue involving the proper calculation of the plaintiff's average weekly wage is not present in the case *sub judice*.

agreement, stipulating the average weekly wages, and the Commission approves this agreement, the parties are bound to its terms absent a showing of error in the formation of the agreement." *Id.* at 132, 489 S.E.2d at .378-79. Accordingly, while *McAninch* may be instructional, it provides no precedential value as to the calculation method to be used in this case.

Other jurisdictions have addressed the issue of how to calculate workers' compensation average weekly wages for educators and other school employees.[3] However, these decisions are of limited value given the unique nature of the contracts for employment in each case as well as each state's unique workers' compensation statutory scheme. Consequently, for guidance in this case, we will examine the statutory intent and construction of N.C. Gen. Stat. § 97-2(5), the undisputed facts of this case, and factually similar cases which have interpreted N.C. Gen. Stat. § 97-2(5).

Although "[w]hen the first method of compensation *can* be used, it *must* be used[,]" *Hensley*, 296 N.C. at 533, 251 S.E.2d at 402, that method cannot be used when the injured employee has been working in that employment for fewer than 52 weeks in the year preceding the date of the accident. *Loch v. Entm't Ptnrs.*, 148 N.C. App. 106, 557 S.E.2d 182 (2001). Here, since the employment contract between Plaintiff and Defendant was not included in the Record on Appeal, the actual terms of the contract are not available to this Court. However,

---

3. *See, generally, Powell v. Indus. Comm'n*, 451 P.2d 37 (Ariz. 1969) (calculating the plaintiff-school teacher's average weekly wages by dividing the annual salary specified in her contract by the nine-month period of employment specified in her contract); *Lynch v. U.S.D. No. 480*, 850 P.2d 271 (Kan. Ct. App. 1993) (determining that average weekly wages of a school teacher are calculated by dividing the money earned during the school year by the actual number of weeks worked); *Brounette v. E. Baton Rouge Parish Sch. Bd.*, 610 So. 2d 979 (La. Ct. App. 1992), *cert. denied*, 612 So. 2d 64 (La. 1993) (calculating the plaintiff-school board employee's average weekly wages by dividing her annual salary, received in nine monthly installments, by 52); *Herbst's Case*, 624 N.E.2d 564 (Mass. 1993) (calculating the plaintiff-school teacher's average weekly wages by dividing his yearly earnings by 52); *Duran v. Albuquerque Pub. Sch.*, 731 P.2d 1341 (N.M. Ct. App. 1986), *cert. denied*, 731 P.2d 1334 (N.M. 1987) (calculating the plaintiff's maximum weekly workers' compensation benefits based on a 52-week work year rather than on the basis of the 40-week work year which she actually worked under the terms of her contract with the public school system); *Jones v. Worker's Comp. Appeal Bd.*, 786 A.2d 1026 (Pa. Commw. Ct. 2001) (holding that because the plaintiff-school teacher's contract called for an annual salary, the average wage should be determined by dividing her salary by 52 weeks rather than time actually worked); *Stofa v. Workers' Comp. Appeal Bd.*, 702 A.2d 381 (Pa. Commw. Ct. 1997) (holding the public school district properly divided the petitioner-school teacher's salary by 52 weeks to calculate the wages to deduct from petitioner's pre-injury average weekly wage to determine petitioner's partial disability benefits).

the record contains uncontradicted evidence that Plaintiff's employment by New Hanover County Schools extended for a period of less than 52 weeks prior to the accident. Plaintiff drove a bus for 10 months out of the year, was paid for 10 months of work, received her paycheck 10 times a year, and did not work or get paid during the summer when school was out. Defendant was not obligated to compensate Plaintiff during the summer months, nor was Plaintiff obligated to work for Defendant during those months. As a result, her average weekly wages cannot be computed under the first method set out in N.C. Gen. Stat. § 97-2(5).

Accordingly, we next examine whether Plaintiff's average weekly wages should be calculated pursuant to the third statutory method.[4] Using this method, the Full Commission determined Plaintiff's average weekly wages to be $434.07. Based on this calculation, the next inquiry required by the statute is whether the results obtained are "fair and just to both parties." N.C. Gen. Stat. § 97-2(5). Here, using the third method, Plaintiff's yearly salary would become $22,571.64, which is $4,962.70 more than her actual pre-injury wages. This result is not fair and just as Defendant would be unduly burdened while Plaintiff would receive a windfall. The purpose of our Workers' Compensation Act is not to put the employee in a better position and the employer in a worse position than they occupied before the injury. Thus, the third method is not appropriate in this case.

Therefore, we must evaluate the propriety of using the fifth method of calculation.[5] This method may only be utilized subsequent to a finding that the previous methods were either inapplicable, or were applicable but would fail to produce results fair and just to both parties. *Wallace v. Music Shop, II, Inc.*, 11 N.C. App. 328, 181 S.E.2d 237 (1971). Such is the case here.

In *Joyner*, 266 N.C. 519, 146 S.E.2d 447, our Supreme Court considered a workers' compensation case where the employee was a relief truck driver who worked only on an as-needed basis during the 52 weeks prior to his injury. The Court described the driver's employment as "inherently part-time and intermittent" and held it was "un-

---

4. The second statutory method is not applicable here as it only applies where the employee worked in the employment in which he or she was injured for 52 weeks in the year preceding the accident and lost more than seven consecutive calendar days during that 52-week period.

5. The fourth statutory method is not applicable here as it only applies where the injured employee was employed for a very short period of time or where the terms of employment were casual in nature.

fair[] to the employer . . . [not to] take into consideration both peak and slack periods[,]" *id.* at 522, 146 S.E.2d at 450, in calculating average weekly wages because otherwise "it gives [the] plaintiff the advantage of wages earned in the 'peak' [] season without taking into account the slack periods" during which he did not work. *Id.* at 521, 146 S.E.2d at 449. As a result, the Court held that the employee's average weekly wages were to be calculated under the "exceptional reasons" method set forth in N.C. Gen. Stat. § 97-2(5)[6] by taking the total wages earned during the 52-week period prior to injury[7] and dividing that amount by 52, representing the number of weeks in a year. *Id.* at 522, 146 S.E.2d at 450.

In *Barber v. Going West Transp., Inc.*, 134 N.C. App. 428, 517 S.E.2d 914 (1999), the plaintiff was injured while working as a driver for his employer, a provider of long-haul transportation services specializing in produce shipment. The Full Commission found that the plaintiff had been continuously employed with the employer since 1994, and that the plaintiff's employment was not seasonal. This Court reversed, noting that the plaintiff did not work during February, March, August, September, or November of 1995, and worked only 11 days in April, six days in July, and seven days in December of that year. As a result of this fluctuating work schedule, which was dependent upon the produce season, the plaintiff's job more properly qualified as "seasonal" rather than continuous employment. *Id.* at 436, 517 S.E.2d at 921. As in *Joyner*, the Court held that the employee's weekly wages should be computed under the "exceptional reasons" method of N.C. Gen. Stat. § 97-2(5) by dividing his total earnings in the 52-week period preceding the injury by 52. *Id.* at 437, 517 S.E.2d at 921.

In this case, as in *Joyner*, Plaintiff's employment had "peak times" where she worked full-time, and "slack periods" where she did not work at all. Calculating Plaintiff's average weekly wages using method three inflates her earnings by basing them solely on income earned during "peak times," a result contrary to the Court's reasoning in *Joyner*, and causes a windfall for Plaintiff, contrary to statutory

---

6. *Joyner* was decided under a previous version of N.C. Gen. Stat. § 97-2(5) where the "exceptional reasons" method was the fourth method instead of the fifth method, as it currently is.

7. The plaintiff and another employee did the same work for the same employer for the same wage but at different times during the year at issue. The Court treated their employment as one continuous employment for the purpose of calculating the plaintiff's average weekly wages during the 52-week period prior to the plaintiff's accident.

intent. Furthermore, similar to *Barber*, Plaintiff is essentially a "seasonal" worker who only works during the school year. Although she was considered a full-time employee, by virtue of the school calendar, she was not required to work during the summer and never anticipated doing so. Thus, as in *Joyner* and *Barber*, the fifth, or "exceptional reasons" method identified in N.C. Gen. Stat. § 97-2(5), should be used to calculate Plaintiff's average weekly wages.

The language of the fifth calculation method neither requires nor prohibits any specific mathematical formula from being applied; instead, it directs that the average weekly wages calculated must "most nearly approximate the amount which the injured employee would be earning were it not for the injury." N.C. Gen. Stat. § 97-2(5). Plaintiff earned $17,608.94 in the 52 weeks preceding the accident. Although she only worked approximately 40 of those weeks and was paid in 10 monthly paychecks, the compensation she collects for workers' compensation will be paid every week, including the weeks of her summer vacation. Consequently, as in *Joyner* and *Barber*, Plaintiff's average weekly wages should be calculated by dividing the wages she earned in the 52-week period prior to her accident by 52, the number of weeks in the year. This calculation yields average weekly wages of $338.63, which most nearly approximates the amount Plaintiff would be earning were it not for her injury.[8]

We therefore reverse the decision of the Full Commission and remand for entry of an Award in accordance with this opinion.

REVERSED AND REMANDED.

Judges McGEE and SMITH concur.

---

8. Although this Court suggested in *Loch v. Entm't Ptnrs.*, 148 N.C. App. 106, 557 S.E.2d 182, that calculating an employee's average weekly wages under the fifth method of the statute, using the formula set out in the first method, might be an impermissible way "to circumvent the statute when calculation under the first method was otherwise inappropriate[,]" *id.* at 112, 557 S.E.2d at 186, our Supreme Court in *Joyner*, 266 N.C. 519, 146 S.E.2d 447, in making the precise calculation which *Loch* suggests is impermissible, stressed that the dominant intent of N.C. Gen. Stat. § 97-2(5) is that "*results* fair and just to both employer and employee be obtained[,]" *id.* at 522, 146 S.E.2d at 449 (emphasis added), regardless of the method or formula used.