***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modifications, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS *Page 2 
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the jurisdiction of the North Carolina Industrial Commission at all times relevant to these proceedings.
2. An employment relationship existed between the parties on November 14, 2005.
3. Defendant-Carrier provided workers' compensation insurance coverage to Defendant-Employer during Plaintiff's employment with Defendant-Employer, including November 14, 2005.
4. All North Carolina Industrial Commission forms and filings are submitted as a stipulated exhibit.
5. Pursuant to a Form 60, Plaintiff injured her left arm on November 14, 2005.
6. On July 27, 2006, Defendants filed a Form 60.
7. On January 31, 2006, Defendants filed a Form 22. However, Plaintiff contests the accuracy of the Form 22.
8. On or about June 13, 2007, Defendants retained Jeanne Murphy, M.S., C.R.C., C.V.E., a vocational case manager. On June 21, 2007, Defendants filed a Form 25C, and Ms. Murphy began working with Plaintiff.
9. On or about March 2, 2008, Defendants retained John McGregor, M.S., C.D.M.S., C.V.E., a vocational case manager.
10. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One (1) — North Carolina Industrial Commission forms and filings, as well as miscellaneous payment records and correspondence; *Page 3 
 b. Defendants' Exhibit One (1) — Defendants' claims payment records, submitted following the hearing before the Deputy Commissioner.
 *********** ISSUES
The issues to be determined are:
1. What was Plaintiff's average weekly wage and compensation rate at all times relevant to these proceedings?
2. Whether Plaintiff is entitled to additional workers' compensation benefits, and/or whether Defendants are entitled to a credit for overpayment of temporary total disability compensation to Plaintiff?
3. Whether Plaintiff is entitled to mileage payments? (The parties settled this issue following the hearing before the Deputy Commissioner via a Consent Order approved by the Deputy Commissioner on February 19, 2009.)
4. Whether Defendants defended this claim without reasonable grounds?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 52 years old, with a date of birth of March 16, 1957. Defendant-Employer employed Plaintiff as a full-time sewing machine operator for over 14 years. Plaintiff's employment with Defendant-Employer was not seasonal in nature.
2. On November 14, 2005, Plaintiff was working for Defendant-Employer as a sewing machine operator when she injured her left arm and shoulder while lifting a heavy bundle *Page 4 
of blue jeans. At the time of Plaintiff's November 14, 2005 work injury, she earned $14.23 per hour. Defendants accepted the compensability of Plaintiff's November 14, 2005 work injury via a Form 60 dated July 27, 2006, which lists Plaintiff's average weekly wage as $504.99, yielding a compensation rate of $336.66.
3. Shortly after February 10, 2006, Defendants began paying Plaintiff temporary total disability compensation. The initial check for temporary total disability compensation that Plaintiff received from Defendants was in the amount of $704.73, representing two (2) weeks of compensation at a rate of $352.36 per week. The next four (4) temporary total disability compensation checks that Plaintiff received from Defendants were in the amount of $379.47. On March 13, 2006, Defendants again adjusted Plaintiff's compensation rate, this time to $336.66. Defendants paid Plaintiff temporary total disability compensation in the amount of $336.66 from March 13, 2006 through March 28, 2008. On April 4, 2008, Defendants adjusted Plaintiff's compensation rate again, this time to $366.66, and Plaintiff has been receiving temporary total disability compensation in that amount ever since.
4. On January 31, 2006, Defendants completed a Form 22, which indicated that Plaintiff earned $20,704.70 for the pay periods included on it. However, the January 31, 2006 Form 22 does not cover Plaintiff's 52 weeks of employment immediately preceding her November 14, 2005 work injury, but rather, begins on November 1, 2004 and ends on October 13, 2005. Plaintiff's corresponding pay stubs, stipulated into evidence at the hearing before the Deputy Commissioner, indicated that Plaintiff earned a total of $21,152.98, which includes all weeks except one (1) pay period for which there was no pay stub. However, Plaintiff stated that she likely earned her average income of $512.28 for the period for which the pay stub was not available. The Full Commission finds, based upon the greater weight of the evidence, that *Page 5 
Plaintiff earned a total of $21,665.26 during the 52 weeks of employment preceding her November 14, 2005 work injury.
5. The January 31, 2006 Form 22 and Plaintiff's pay stubs further indicate that there were five (5) separate occasions during the 52 weeks prior to the date of Plaintiff's November 14, 2005 work injury in which she did not work for Defendant-Employer due to plant shut-downs, including the following:
 • December 17, 2004 through January 2, 2005 — 17 days;
 • July 1, 2005 through July 11, 2005 — 11 days;
 • July 15, 2005 through August 2, 2005 — 19 days;
 • August 16, 2005 through September 5, 2005 — 20 days;
 • October 14, 2005 through November 6, 2005 — 24 days.
6. During each of these five (5) separate occasions of Defendant-Employer's plant shut-downs, Plaintiff's time out of work included more than seven (7) consecutive days and some fractions of weeks. Including the fractions of weeks in which Plaintiff did not work for Defendant-Employer due to plant shut-downs during the 52 weeks of employment preceding her November 14, 2005 work injury, she was out of work for a total of 13 weeks. According to documents stipulated into evidence, Plaintiff received a total of $4,472.00 in unemployment benefits during the 52 weeks of employment preceding her November 14, 2005 work injury as a result of Defendant-Employer's plant shut-downs.
7. The Full Commission finds, based upon the greater weight of the evidence, that during the 52 weeks of employment preceding Plaintiff's November 14, 2005 work injury, she did not work for Defendant-Employer for more than seven (7) consecutive calendar days on five (5) separate occasions, for a total of 13 weeks. The Full Commission further finds that it would *Page 6 
be unfair to Plaintiff to use method one (1) under N.C. Gen. Stat. § 97-2(5), since she did not earn her full-time wages during the 52 weeks of employment preceding her November 14, 2005 work injury due to Defendant-Employer's plant shut-downs. Thus, the Full Commission finds that Plaintiff's average weekly wage should be calculated by using method two (2) under N.C. Gen. Stat. § 97-2(5), whereby the earnings for the remainder of the 52 weeks of employment preceding Plaintiff's November 14, 2005 work injury are divided by the number of weeks remaining after the time lost is deducted.
8. Using method two (2) under N.C. Gen. Stat. § 97-2(5) in order to calculate Plaintiff's average weekly wage, and finding as fact that Plaintiff worked a total of 39 weeks and earned a total of $21,665.26 during the 52 weeks of employment preceding her November 14, 2005 work injury, the Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's average weekly wage is $555.52, yielding a compensation rate of $370.37.
9. Since February 10, 2006, Defendants paid temporary total disability compensation to Plaintiff at varying rates, including amounts less than that required and amounts greater than that required by her average weekly wage. The Full Commission finds, based upon the greater weight of the evidence, that to the extent there were errors in the amount of temporary total disability compensation that Defendants paid to Plaintiff since February 10, 2006, these errors were due to circumstances under Defendants' control, and thus Defendants should not be allowed a credit for any overpayments made.
10. The Full Commission finds, based upon the greater weight of the evidence, that Defendants underpaid Plaintiff by $33.71 per week for the 107 weeks that Defendants paid Plaintiff temporary total disability compensation at a rate of $336.66 per week, and that Defendants have been underpaying Plaintiff by $3.71 per week from April 4, 2008 through the *Page 7 
present. The Full Commission further finds that Plaintiff is entitled to have Defendants compensate her for these underpayments.
11. The Full Commission also finds, based upon the greater weight of the evidence, that Defendants' defense of this claim was reasonable.
12. The parties settled the issue of whether Plaintiff is entitled to mileage payments following the hearing before the Deputy Commissioner via a Consent Order approved by the Deputy Commissioner on February 19, 2009.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer on November 14, 2005. N.C. Gen. Stat. § 97-2(6) (2008).
2. N.C. Gen. Stat. § 97-2(5) sets forth in priority sequence the five (5) methods by which a plaintiff's average weekly wage is to be calculated in workers' compensation matters, and method one (1), which entails calculating the total wages of the plaintiff for the 52 weeks of employment preceding the work injury and dividing that sum by 52, is to be the primary method. N.C. Gen. Stat. § 97-2(5) (2008); McAninch v. Buncombe City Schools,347 N.C. 126, 489 S.E.2d 375 (1997); Bond v. Foster Masonry,Inc., 139 N.C. App. 123, 532 S.E.2d 583 (2000). Although method one (1) is given preference, it cannot be used when the plaintiff has been working for fewer than 52 weeks in the year preceding the work injury. Conyers v. New Hanover County Schools,188 N.C. App. 253, 654 S.E.2d 745 (2008). Further, it is the clear intention of the *Page 8 
North Carolina Workers' Compensation Act to calculate an average weekly wage that is fair and just to both parties. Id.
3. In the case at bar, method one (1) under N.C. Gen. Stat. § 97-2(5) cannot be used because Plaintiff, although employed, worked for Defendant-Employer fewer than 52 weeks in the year preceding the work injury, and it would be unfair to Plaintiff to use method one (1), since she did not earn wages during all of the 52 weeks of employment preceding her November 14, 2005 work injury due to Defendant-Employer's plant shut-downs. N.C. Gen. Stat. § 97-2(5) (2008); McAninch, 347 N.C. 126,489 S.E.2d 375 (1997); Conyers, 188 N.C. App. 253,654 S.E.2d 745 (2008); Bond, 139 N.C. App. 123,532 S.E.2d 583 (2000). Thus, Plaintiff's average weekly wage should be calculated by using method two (2) under N.C. Gen. Stat. § 97-2(5), whereby the earnings for the remainder of the 52 weeks of employment preceding Plaintiff's November 14, 2005 work injury are divided by the number of weeks remaining after the time lost is deducted. N.C. Gen. Stat. § 97-2(5) (2008). Because method two (2) under N.C. Gen. Stat. § 97-2(5) is applicable to Plaintiff's case, and it is the next method to be used in the order of priority in N.C. Gen. Stat. § 97-2(5), methods three (3), four (4), and five (5) are not reached. N.C. Gen. Stat. § 97-2(5) (2008);McAninch, 347 N.C. 126, 489 S.E.2d 375 (1997);Conyers, 188 N.C. App. 253, 654 S.E.2d 745 (2008);Bond, 139 N.C. App. 123, 532 S.E.2d 583 (2000).
4. Because the January 31, 2006 Form 22 does not cover Plaintiff's 52 weeks of employment immediately preceding her November 14, 2005 work injury, but rather, begins on November 1, 2004 and ends on October 13, 2005, it cannot be used to determine the average weekly wage. N.C. Gen. Stat. § 97-2(5) (2008). However, Plaintiff's pay stubs and her testimony provide sufficient evidence upon which to base her total wage earnings for the 52 weeks of employment immediately preceding her November 14, 2005 work injury. Thus, *Page 9 
Plaintiff earned a total of $21,665.26 during the 52 weeks of employment preceding her November 14, 2005 work injury.
5. The unemployment benefits that Plaintiff received during the 52 weeks of employment preceding her November 14, 2005 work injury as a result of Defendant-Employer's plant shut-downs cannot be included in the computation of her average weekly wage. None of the methods of computing such wages under N.C. Gen. Stat. § 97-2(5) allow the inclusion of wages earned in employment other than that in which the work injury occurred. N.C. Gen. Stat. § 97-2(5) (2008);McAninch, 347 N.C. 126, 489 S.E.2d 375 (1997).
6. The North Carolina Industrial Commission rules provide that "[i]n all cases involving a fractional part of a week, the daily wage shall be computed on the basis of one-seventh of the average weekly wage." North Carolina Industrial Commission Rule 402. Thus, the fractions of weeks in which Plaintiff did not work for Defendant-Employer due to plant shut-downs during the 52 weeks of employment preceding her November 14, 2005 work injury "shall be computed on the basis of one-seventh of the average weekly wage."Id. Including the fractions of weeks with the whole weeks in which Plaintiff did not work for Defendant-Employer due to plant shut-downs during the 52 weeks of employment preceding her November 14, 2005 work injury, she was out of work for a total of 13 weeks.
7. Using method two (2) under N.C. Gen. Stat. § 97-2(5) in order to calculate Plaintiff's average weekly wage, the Full Commission concludes that Plaintiff worked a total of 39 weeks and earned a total of $21,665.26 during the 52 weeks of employment preceding her November 14, 2005 work injury. Therefore, Plaintiff's average weekly wage is $555.52, yielding a compensation rate of $370.37. N.C. Gen. Stat. § 97-2(5) (2008). *Page 10 
8. Plaintiff is entitled to temporary total disability compensation from November 14, 2005 through the present and continuing until further order of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-29 (2008).
9. To the extent there were any errors in the amount of temporary total disability compensation that Defendants paid to Plaintiff since February 10, 2006, these errors were due to circumstances under Defendants' control, and thus Defendants are not entitled to a credit for any overpayments made. N.C. Gen. Stat. § 97-42 (2008).
10. Defendants underpaid Plaintiff by $33.71 per week for the 107 weeks that Defendants paid Plaintiff temporary total disability compensation at a rate of $336.66 per week, and Defendants have been underpaying Plaintiff by $3.71 per week from April 4, 2008 through the present. Plaintiff is entitled to have Defendants compensate her for these underpayments.
11. Plaintiff is entitled to have Defendants pay for all medical treatment reasonably related to her November 14, 2005 work injury. N.C. Gen. Stat. §§ 97-25; 97-25.1 (2008).
12. Defendants' defense of this claim was reasonable. N.C. Gen. Stat. § 97-88.1 (2008).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $370.37 per week from November 14, 2005 and continuing until further Order of the North Carolina Industrial *Page 11 
Commission. Any accrued compensation shall be paid in a lump sum. Defendants are allowed a credit for compensation already paid, except for the overpayments discussed above.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's November 14, 2005 work injury, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen her period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff under paragraph one (1), above. Defendants shall deduct and pay directly to Plaintiff's counsel 25 percent of the accrued compensation owed to Plaintiff and every fourth check thereafter.
4. Defendants shall pay the costs of these proceedings.
This the ___ day of December 2009.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER