***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of former Deputy Commissioner Deluca and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. It is stipulated that all parties are properly before the Industrial Commission and *Page 2 
subject to the terms of the Workers' Compensation Act and that the Commission has jurisdiction over the parties and of the subject matter.
2. It is stipulated that Plaintiff-Employee, Charlotte Harrell, is an employee of Defendant, Edgecombe County Public Schools the self-insured employer [Defendant-Employer], and Corvel Corporation is the Third Party Administrator.
3. It is stipulated that Plaintiff-Employee sustained an injury by accident on September 24, 2002.
4. The parties entered the following stipulated exhibits into evidence at the hearing before former Deputy Commissioner Deluca:
 a) Stipulated Exhibit 1: Pre-trial Agreement
 b) Stipulated Exhibit 2: Medical Records
 c) Stipulated Exhibit 3: Industrial Commission Forms
 d) Stipulated Exhibit 4: Plaintiff's Responses to Defendant's Interrogatories
 e) Stipulated Exhibit 5: Indemnity Payments Chart
 f) Stipulated Exhibit 6: Personnel Records
 ***********
As set forth in the Pre-Trial Agreement and former Deputy Commissioner Deluca's November 19, 2010 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. What is the proper average weekly wage and compensation rate;
2. What amount is the employer entitled to as a credit for overpayment of temporary total disability and temporary partial disability;
3. Whether Plaintiff has established total disability under N.C. Gen. Stat. § 97-29; *Page 3 
4. Whether Plaintiff's current job as a School Food Services Assistant is suitable employment?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff-Employee, Charlotte Harrell, is a fifty-seven (57) year old female with a date of birth of June 12, 1954. She graduated from high school and obtained work experience as a certified nursing assistant (CNA) and as an employee of Kentucky Fried Chicken.
2. Plaintiff began working as a cafeteria cashier for Edgecombe County Schools in 1994. At that time, she worked three (3) hours per day at Stocks Elementary School. In August 2001, Plaintiff was transferred to Tarboro High School and was scheduled to work four (4) hours per day. As a cafeteria cashier, Plaintiff would set up the checkout line with condiments, as well as napkins, forks, plates, and snacks. Plaintiff also worked as a bus driver for Edgecombe County Schools, beginning in 1985.
3. On September 24, 2002, Plaintiff injured her lower back as she lifted a box of ketchup.
4. Plaintiff filed a Form 18 on October 8, 2002. Defendant accepted the claim on a Form 60 filed November 1, 2002, and temporary partial disability (hereinafter "TPD") benefits were paid for the two (2) weeks that Plaintiff could not drive a bus. The average weekly wage on the Form 60 was $320.81, yielding a compensation rate of $213.88. The average weekly wage was calculated under the third method of N.C. Gen. Stat. § 97-2(5).
5. Bryant Ramirez was the adjustor on the claim in 2002 and filed the Form 60. He *Page 4 
testified that he calculated the average weekly wage based on a Form 22 completed by Defendant-Employer. At that time, the average weekly wage was calculated based upon Plaintiff's ten (10) month work schedule. Mr. Ramirez testified that the average weekly wage calculated in 2002 is not correct based upon current practice and case law, and the current method he uses is to divide the total annual wages by 52 weeks rather than by the number of weeks actually worked by the employee.
6. Following the injury, Plaintiff received conservative treatment at Heritage Hospital. Subsequent treatment was provided by Dr. Robert Martin and Dr. David Miller at Carolina Regional Orthopedics. Plaintiff was initially restricted from bus driving for approximately two (2) weeks, after which Plaintiff continued working as both a bus driver and a cafeteria cashier.
7. Dr. Miller became Plaintiff's treating physician on July 15, 2004. Plaintiff continued to work in the cafeteria and drive a school bus from October 8, 2002, until January 27, 2005, when she was restricted by Dr. Miller from driving a school bus. Plaintiff continued to work full duty in the cafeteria until her compensable back surgery on September 26, 2005. On September 26, 2005, Dr. Miller performed an L4-5 total disc replacement using a Charite artificial disc. Postoperatively, Plaintiff was out of work and received temporary total disability (hereinafter "TTD") until January 25, 2006. On January 25, 2006, Dr. Miller released Plaintiff to return to work as a cashier and a CNA, but she was restricted from returning to work as a bus driver.
8. Plaintiff returned to work on February 22, 2006, as a cashier.
9. TPD was paid to Plaintiff from February 23, 2006, until the expiration of the 300 week period of eligibility; 300 weeks from Plaintiff's date of injury on September 24, 2002. *Page 5 
10. On July 17, 2006, Dr. Miller deemed Plaintiff to be at maximum medical improvement and released her to return to light-duty work with a twenty-five (25) pound lifting restriction. She was also restricted from repetitive bending at the waist and from performing repetitive work. Dr. Miller assigned a 15% permanent partial impairment rating of the spine. Plaintiff was referred for pain management.
11. Dr. David Miller last treated Plaintiff on April 3, 2009. During his deposition, Dr. Miller stated that he would set Plaintiff's lifting restriction at twenty (20) pounds. This would include no pushing or pulling more than twenty (20) pounds. He also restricted her from repetitive bending at the waist, as well as no bus driving. Dr. Miller further stated that the cafeteria cashier duties appeared to be within her restrictions.
12. Initially, Plaintiff received pain management from Dr. James Wells and other physicians at Pitt County Memorial Hospital. Treatment included various medications, injections, chiropractic treatment, and physical therapy.
13. On April 8, 2009, Plaintiff began treating with Dr. Divya Patel with Carolina Regional Orthopedics for pain management. Dr. Patel has provided pain management through medications, injections, and physical therapy. Dr. Patel has prescribed a Bledsoe LSO back brace and a single point cane. Dr. Patel has not issued any specific work restrictions for Plaintiff and has deferred to Dr. Miller on that issue. Dr. Patel was not aware that Plaintiff worked as a cafeteria cashier. Plaintiff has not reported to Dr. Patel that she had any difficulties working as a cashier.
14. Plaintiff has continued to work since February 22, 2006, as a cafeteria cashier and continues to work for Defendant-Employer in that capacity. Plaintiff's job duties as a cafeteria cashier, both prior to the injury and after the injury, have remained the same. *Page 6 
15. Jane Reynolds is a cafeteria manager and Plaintiff's supervisor. Ms. Reynolds was aware that Plaintiff had light-duty work restrictions. Ms. Reynolds testified that Plaintiff is responsible for cashiering during four lunch periods, counting the money, and also putting out condiments and snacks. The condiments are in small round plastic buckets that Plaintiff places on a cart and moves to and from the stockroom.
16. Ms. Reynolds further testified that the job requires very little bending and Plaintiff does not lift more than fifteen (15) pounds. Plaintiff's restrictions have not affected her ability to do her job. Ms. Reynolds has not observed Plaintiff having any difficulty completing her job duties. Plaintiff has not complained to Ms. Reynolds that she is unable to perform the job. There are other employees in the cafeteria who work part-time. While the position requires some bending, it does not entail repetitive bending over the course of a work shift.
17. On September 2, 2009, Plaintiff filed a Form 33 alleging that she was disabled and that she was being forced to comply with "make-work." Defendants filed a Form 33R stating that Plaintiff had returned to work on February 22, 2006, and that her restrictions had been adhered to for over three (3) years. Further, Plaintiff had been compensated with TPD benefits for 300 weeks from her date of injury.
18. The competent evidence shows that Plaintiff has failed to produce sufficient medical evidence showing that she is incapable of work in any employment as a result of her September 24, 2002 incident.
19. The competent evidence of record shows Plaintiff is capable of earning a partial amount of her pre-injury wages with Defendant-Employer in the cafeteria cashier position.
20. The Full Commission finds that the parties were unable to stipulate to Plaintiff's average weekly wages as defined by N.C. Gen. Stat. § 97-2(5). *Page 7 
21. The Full Commission finds that Plaintiff is a school employee who works ten months a year, and therefore, the proper average weekly wage in this claim is $273.79, resulting in a compensation rate of $182.54 when using the fifth method of calculation under N.C. Gen. Stat. § 97-2(5) as instructed by the Court of Appeals in Conyers v. New Hanover County Schools,188 N.C. App. 253, 654 S.E.2d 745 (2008).
22. Plaintiff has received TPD compensation totaling $8,751.69 since the date she reached maximum medical improvement, July 17, 2006, which was based on the higher, incorrect compensation rate. At the correct compensation rate, Plaintiff would have been entitled to $7,472.57.
23. On July 17, 2006, Dr. Miller assigned a 15% permanent partial impairment rating to the spine, which gives 45 weeks of benefits or $8,214.30 ($182.54 multiplied by 45 weeks) at the correct compensation rate.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury to her lower back. N.C. Gen. Stat. § 97-2(6). Plaintiff maintains the burden to prove disability. Johnson v. Southern Tire Co.,358 N.C. 701, 599 S.E.2d 508 (2004). Disability is defined as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Id. at 707, 599 S.E.2d at 510; N.C. Gen. Stat. §§ 97-2(9), 97-29.
2. An injured employee seeking compensation generally has two options under the Workers' Compensation Act. First, an employee may seek benefits "by showing that the *Page 8 
employee has suffered a loss of wage-earning capacity pursuant to N.C. Gen. Stat. § 97-29 or N.C. Gen. Stat. § 97-30."Knight v. Wal-Mart Stores, Inc.,149 N.C. App. 1, 10, 562 S.E.2d 434, 441 (2002). If the loss of wage-earning capacity is total, an employee may seek recovery under N.C. Gen. Stat. § 97-29. If the loss of wage-earning capacity is partial, an employee may seek recovery under N.C. Gen. Stat. § 97-30. Second, an employee may seek benefits by showing "the employee has a specific physical impairment that falls under the schedule set forth in N.C. Gen. Stat. § 97-31, regardless of whether the employee has, in fact, suffered a loss of wage-earning capacity."Id. at 11, 562 S.E.2d at 442. See Arnold v. Wal-Mart,154 N.C. App. 482, 571 S.E.2d 588 (2002).
3. Plaintiff is entitled to select a remedy under either N.C. Gen. Stat. § 97-31 or N.C. Gen. Stat. § 97-30 and may receive benefits under the provisions offering the more generous benefits, less the amount he or she has already received after reaching maximum medical improvement. Gupton v. BuildersTransport, 320 N.C. 38, 42, 357 S.E.2d 674, 677 (1987).
4. Plaintiff has not established total disability from her compensable lower back condition as a result of her September 24, 2002 injury. N.C. Gen. Stat. § 97-29.
5. N.C. Gen. Stat. § 97-2(5) sets forth in priority sequence the five (5) methods by which a Plaintiff's average weekly wage is to be calculated in workers' compensation matters, and method one (1), which entails calculating the total wages of the Plaintiff for the 52 weeks of employment preceding the work injury and dividing that sum by 52, is to be the primary method. N.C. Gen. Stat. § 97-2(5); McAninch v. Buncombe City Schools,347 N.C. 126, 489 S.E.2d 375 (1997); Bond v. Foster Masonry,Inc., 139 N.C. App. 123, 532 S.E.2d 583 (2000). Although method one (1) is given preference, it cannot be used when the Plaintiff has been working for fewer than 52 weeks in the year preceding the work injury. Conyers v. New Hanover County Schools, *Page 9 188 N.C. App. 253, 654 S.E.2d 745 (2008). Further, it is the clear intention of the North Carolina Workers' Compensation Act to calculate an average weekly wage that is fair and just to both parties. Id.
6. In the case at bar, methods one (1) through four (4) under N.C. Gen. Stat. § 97-2(5) cannot be used for the reasons set forth above. Based on the competent evidence of record, the appropriate method of calculating an average weekly wage that will provide results fair and just to both parties is the fifth method prescribed by N.C. Gen. Stat. § 97-2(5); Conyers v. NewHanover County Schools,188 N.C. App. 253, 654 S.E.2D 745 (2008). The proper average weekly wage in this claim is $273.79, yielding a compensation rate of $182.54.
7. Defendant-Employer had paid $7,669.35 in TTD benefits through July 17, 2006, based upon an incorrect average weekly wage. At the correct compensation rate of $182.54 per week, Plaintiff would have been entitled to receive $6545.88. Plaintiff was overpaid $1,123.47 in TTD benefits. Defendant-Employer has paid $8,751.69 under N.C. Gen. Stat. § 97-30 for TPD benefits since July 17, 2006. Plaintiff was entitled to the permanent partial disability rating of 15% or $8,214.30, which is the more munificent amount. Plaintiff-Employee was overpaid $537.39 when taking into consideration the actual amount of TPD benefits compared to the rating amount at the proper compensation rate. Defendant-Employer is entitled to a combined offset of $1,123.47 for TTD plus $537.39 from the difference in the rating for a total of $1,660.86, against any future indemnity benefits owed to Plaintiff.
8. Plaintiff has been working in a light-duty cashier position suitable to her permanent restrictions since February 22, 2006. N.C. Gen. Stat. § 97-32.1. This particular light-duty position was not a make-work position, as it existed before Plaintiff's injury.Saums v. Raleigh Community Hosp., *Page 10 346 N.C. 760, 487 S.E.2d 746 (1997); Peoples v. Cone Mills,316 N.C. 426, 342 S.E.2d 798 (1986).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for additional disability compensation is DENIED.
2. Defendant is entitled to a combined offset of $1,660.86, against any future indemnity benefits owed to Plaintiff.
3. Each side shall bear its own costs.
This the 7th day of July, 2011.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 1