McGEE, Chief Judge.
 

 *2
 
 Elizabeth Ball ("Plaintiff") appeals from a final decision of the North Carolina Industrial Commission ("the Commission"). The Commission utilized a particular method set
 
 *693
 
 out in
 
 N.C. Gen. Stat. § 97-2
 
 (5) -Method 3-to calculate Plaintiff's average weekly wage for her temporary total disability benefits. We conclude that use of Method 3 was not "fair and just" to Plaintiff, a requirement of N.C.G.S. § 97-2(5). Accordingly, we reverse and remand to the Commission for calculation of Plaintiff's benefits using the appropriate statutory method.
 

 I.
 
 Background
 

 Plaintiff began her employment as a certified nurse's assistant with Bayada Home Health Care ("Bayada") on 26 May 2010. Plaintiff worked on a part-time basis for Bayada from 26 May 2010 until 30 November 2010, when she began to work a full-time schedule. During this time in her employment, Plaintiff earned $8.00 per hour. In February 2011, Plaintiff was transferred from Bayada's Asheville office to its Hendersonville office, where she began working with a single, specific client ("the client"). As a result of this change, Plaintiff began working an increased number of hours, and at an increased wage-$10.00 per hour. On Plaintiff's first day of work with the client at the higher hourly rate, 10 February 2011, Plaintiff was injured when the client, who suffered from Alzheimer's, pushed Plaintiff down several stairs.
 

 Plaintiff sought medical treatment for her injuries that same day and was released to limited duty work. Three days later, Plaintiff requested a release for full work duty and was granted such by her medical care provider. Despite her 10 February 2011 injury, Plaintiff continued to work for the client, with the attendant increase in hours and rate of pay, through 18 May 2011. On that date, Plaintiff alleged, she suffered a second injury while working with the client.
 

 Plaintiff filed a Form 18 on 20 March 2012 informing Bayada, its insurance carrier Arch Insurance Group, Inc., and the third-party administrator, Gallagher Bassett Services, Inc. (together, "Defendants") of her 10 February 2011 incident. In the Form 18, Plaintiff claimed injuries to her left hand, both knees, and right hip from the 10 February 2011 incident. Plaintiff filed a second Form 18 on the same day, informing Defendants of the alleged 18 May 2011 incident, and claimed injuries in that incident to both of her knees. Defendants admitted the compensability of Plaintiff's 10 February 2011 injury to her right leg, but denied the compensability of the injuries to her hips and hands. Defendants also denied compensability of all injuries stemming from the 18 May 2011 incident. Despite denying the compensability of Plaintiff's alleged 18 May
 
 *3
 
 2011 injuries, Defendants filed a Form 60 on 10 June 2011, admitting Plaintiff's "disability resulting from the injur[ies] began on" 19 May 2011.
 

 Plaintiff filed a Form 33 on 31 May 2012, requesting that her disability claim be assigned for hearing, and a hearing was held before a deputy commissioner on 26 May 2015. Following that hearing, the deputy commissioner filed an opinion 16 August 2012 concluding as a matter of law that Plaintiff suffered compensable injuries on both 10 February 2011 and 18 May 2011. The deputy commissioner also determined that the appropriate method to determine Plaintiff's average weekly wage was Method 5, as listed in N.C.G.S. § 97-2(5), which resulted in an average weekly wage of $510.33 and a corresponding weekly compensation rate of $340.24 for Plaintiff's temporary total disability payments. Defendants appealed to the Commission.
 

 Upon its
 
 de novo
 
 review, the Commission concluded as a matter of law that,
 
 inter alia
 
 : (1) Plaintiff had suffered a compensable injury on 10 February 2011; (2) there was not sufficient, competent evidence of Plaintiff's being injured on 18 May 2011; (3) Plaintiff's disability began on 19 May 2011; and (4) Plaintiff had ongoing medical treatment needs. The Commission concluded as a matter of law that Methods 1, 2, and 4, as listed in N.C.G.S. § 97-2(5), were inapplicable to the facts of the present case, and as such that "utilization of [M]ethod [3] for calculation of average weekly wage" applied to Plaintiff's claim.
 

 The Commission determined that, applying Method 3, Plaintiff was entitled to "an average weekly wage of $284.79 with a compensation rate of $189.87." The Commission further found that "calculation of [P]laintiff's average weekly wage using [Method 3] [was]
 

 *694
 
 fair and just to both [P]laintiff and [D]efendants." Plaintiff appeals.
 

 II.
 
 Analysis
 

 Plaintiff contends the Commission erred in utilizing Method 3 in N.C.G.S. § 97-2(5) because use of that method is not "fair and just" to her, as required by that statute. Our review of an opinion and award of the Industrial Commission "is limited to a determination of whether the Full Commission's findings of fact are supported by any competent evidence, and whether those findings support the Full Commission's legal conclusions."
 
 Conyers v. New Hanover Cty. Sch.
 
 ,
 
 188 N.C.App. 253
 
 , 255,
 
 654 S.E.2d 745
 
 , 748 (2008) (citing
 
 Adams v. AVX Corp.
 
 ,
 
 349 N.C. 676
 
 ,
 
 509 S.E.2d 411
 
 (1998) ). The Commission's conclusions of law are reviewable
 
 de novo
 
 .
 

 Id.
 

 Findings of fact not challenged are binding on appeal.
 
 See
 

 Strezinski v. City of Greensboro
 
 ,
 
 187 N.C.App. 703
 
 , 707,
 
 654 S.E.2d 263
 
 , 266 (2007). Plaintiff only challenges the trial court's finding and
 
 *4
 
 conclusion that utilization of Method 3 to calculate her average weekly wages was "fair and just" to her.
 

 "In North Carolina, the calculation of an injured employee's average weekly wages is governed by
 
 N.C. Gen. Stat. § 97-2
 
 (5)."
 
 Conyers
 
 ,
 
 188 N.C.App. at 255
 
 , 654 S.E.2d at 748. N.C.G.S. § 97-2(5) "sets forth in priority sequence five methods by which an injured employee's average weekly wages are to be computed."
 
 Shaw v. U.S. Airways, Inc.
 
 ,
 
 362 N.C. 457
 
 , 459,
 
 665 S.E.2d 449
 
 , 451 (2008) (citation omitted). As relevant to the present case, N.C.G.S. § 97-2(5) provides:
 

 [Method 1:] "Average weekly wages" shall mean the earnings of the injured employee in the employment in which the employee was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury ..., divided by 52;
 

 ....
 

 [Method 3:] Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed;
 
 provided, results fair and just to both parties will be thereby obtained
 
 .
 

 ....
 

 [Method 5:] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury."
 

 N.C. Gen. Stat. § 97-2
 
 (5) (2015) (emphasis added).
 

 The "dominant intent" of N.C.G.S. § 97-2(5) "is to obtain results that are fair and just to both employer and employee."
 
 Conyers
 
 ,
 
 188 N.C.App. at 256
 
 , 654 S.E.2d at 748 (citing
 
 Joyner v. A. J. Carey Oil Co.
 
 ,
 
 266 N.C. 519
 
 ,
 
 146 S.E.2d 447
 
 (1966) ). The words "fair and just"
 

 may not be considered generalities, variable according to the predilections of the individuals who from time to time compose the Commission. These words must be related to the standard set up by the statute. Results fair and just,
 
 *5
 
 within the meaning of [ N.C.G.S. § 97-2(5) ],
 
 [1]
 
 consist of such "average weekly wages" as will most nearly approximate the amount which the injured employee
 
 would be earning
 
 were it not for the injury, in the employment in which he was working at the time of his injury.
 

 Liles v. Faulkner Neon & Elec. Co.
 
 ,
 
 244 N.C. 653
 
 , 660,
 
 94 S.E.2d 790
 
 , 796 (1956) (emphasis in original).
 

 Plaintiff argues that use of Method 3 to calculate her average weekly wage was not "fair and just" to her. Use of Method 3, she argues, only takes into account the part-time work she completed at a lower hourly rate, and ignores the uncontested fact that she worked, post-injury, at a higher hourly wage and frequency. We agree. Plaintiff began work with Bayada on 26 May 2010 and was
 
 *695
 
 injured some nine months later, on 10 February 2011. During that time period, Plaintiff worked part-time and was paid an hourly rate of $8.00, and earned $3,215.25 over a period of 79 days. On the day Plaintiff was injured, she had begun to work with a new Bayada client, which required her to work increased hours and she earned a higher rate of pay-$10.00 per hour, two dollars per hour more than she had previously earned. Plaintiff continued working the increased hours at the increased rate of pay for more than three months, from the date of her injury until 18 May 2011, the date of her alleged second injury.
 

 We hold that only taking into account Plaintiff's pre-injury compensation, through use of Method 3, is unfair to Plaintiff, as it ignores the months of increased hours and pay Plaintiff worked after her 10 February 2011 injury, and would effectively treat Plaintiff as if she had never worked increased hours at a higher rate of pay. We must reject the use of Method 3 on the facts of the present case, as use of that method "squarely conflicts with the statute's unambiguous command to use a methodology that 'will most nearly approximate the amount which the injured employee would be earning were it not for the injury.' "
 
 Tedder v. A&K Enters.
 
 ,
 
 238 N.C.App. 169
 
 , 175,
 
 767 S.E.2d 98
 
 , 103 (2014) (quoting N.C.G.S. § 97-2(5) ). Defendants admitted that Plaintiff was disabled as a result of her 10 February 2011 injury. In order to "most nearly approximate" what Plaintiff would be earning if she had not been injured, we believe that Plaintiff's post-injury work must be taken into account.
 

 Defendants main argument in response is that, due to the nature of Plaintiff's employment, there was no certainty that Plaintiff would have continued to earn higher wages with increased hours but for her
 
 *6
 
 injury. As support for this argument, Defendants point to the hearing testimony of Plaintiff's supervisor at Bayada, Elizabeth Kader ("Kader"). Kader generally testified that Bayada employees each had different schedules, and that some employees "work six different clients every week" while others "work the same client every single week fifty-two weeks out of the year." From this testimony, Defendants suggest there was no certainty that Plaintiff would continue to work increased hours at a higher hourly rate. While it is certainly true that there was no absolute assurance that Plaintiff would continue to work increased hours at a higher rate of pay, this uncertainty is no different than the uncertainty found in any at-will employment.
 
 [2]
 
 On the unique facts of the present case, we need not speculate about whether Plaintiff would have worked increased hours and pay for at least some period of time after her 10 February 2011 injury, as evidence in the record proves that she did. It is undisputed that, after Plaintiff's 10 February 2011 injury, she worked for more than three months at the increased hours and pay-a fact that application of Method 3 unfairly ignores.
 

 We find instructive cases in which this Court and our Supreme Court determined that use of Method 3 was not "fair and just." In
 
 Joyner
 
 , an injured truck driver worked on an as-needed basis during the 52 weeks prior to his injury.
 
 See
 

 Joyner
 
 ,
 
 266 N.C. at 519
 
 ,
 
 146 S.E.2d at 450
 
 . Our Supreme Court described the employee's work as "inherently part-time and intermittent" and held it was unfair "to the employer ... [not to] take into consideration both peak and slack periods" in calculating average weekly wages.
 

 Id.
 

 at 522
 
 ,
 
 146 S.E.2d at 450
 
 . As a result, the Court held that the employee's average weekly wage should have been calculated pursuant to Method 5.
 
 Id
 
 .
 

 In
 
 Conyers
 
 , a school bus driver for a public school system suffered a compensable injury during the course of her employment.
 
 Conyers
 
 ,
 
 188 N.C.App. at 254
 
 , 654 S.E.2d at 747. Since the employee only worked the previous ten months of the year, due to school bus drivers not working during a
 
 *696
 
 school's summer recess, the Commission utilized Method 3 to calculate the employee's average weekly wage.
 
 Id.
 
 at 255,
 
 654 S.E.2d at 747
 
 . This Court determined that use of Method 3 was not "fair and just as [the employer] would be unduly burdened while [the employee] would
 
 *7
 
 receive a windfall. The purpose of our Workers' Compensation Act is not to put the employee in a better position and the employer in a worse position than they occupied before the injury."
 
 Id.
 
 at 259, 654 S.E.2d at 750. This Court reversed and determined that use of Method 5 to calculate the bus driver's average weekly wage "most nearly approximat[ed]" the amount the bus driver would have earned "were it not for her injury."
 
 Id.
 
 at 261, 654 S.E.2d at 751-52.
 

 It is worth noting that the Courts in
 
 Joyner
 
 and
 
 Conyers
 
 found use of Method 3 would be unfair and unjust to the employ
 
 er
 
 , while we find that use of Method 3 in the present case to be unfair and unjust to the employ
 
 ee
 
 . Such a finding is not barred, but is instead explicitly contemplated, by the relevant statute. N.C.G.S. § 97-2(5) (stating that Method 3 may be utilized "provided [that] results fair and just to
 
 both parties
 
 will be thereby obtained"). The common thread running through the cases we have examined is that a method of average weekly wage calculation may not be used when use of that particular method would ignore an undisputed fact of the employee's employment.
 

 Use of Method 3 in
 
 Joyner
 
 was inappropriate when use of that method would have ignored the fact that the employee's work was "inherently part-time and intermittent."
 
 Joyner
 
 ,
 
 266 N.C. at 522
 
 ,
 
 146 S.E.2d at 450
 
 . Method 3 was equally inappropriate when use of that method would have ignored the fact that a bus driver only worked ten months out of the year and Method 3 would treat her as if she worked all twelve months.
 
 Conyers
 
 ,
 
 188 N.C.App. at 259
 
 , 654 S.E.2d at 750. And, in the present case, the use of Method 3 is equally inappropriate, where use of that method ignores the uncontroverted evidence that Plaintiff worked for months after her 10 February 2011 injury at a higher frequency and at a higher rate of pay. Method 3 does not "most nearly approximate the amount which [Plaintiff] would be earning were it not for the injury,"
 
 Tedder
 
 ,
 
 238 N.C.App. at 175
 
 ,
 
 767 S.E.2d at 103
 
 (citation omitted), and thus its use is not "fair and just" to Plaintiff as required by N.C.G.S. § 97-2(5).
 

 III.
 
 Conclusion
 

 For the reasons stated, the Commission erred in utilizing Method 3 to calculate Plaintiff's average weekly wage. The opinion and award of the Commission is reversed, and this case is remanded to the Commission for a determination of Plaintiff's average weekly wages utilizing Method 5, and appropriately considering Plaintiff's post-injury work.
 

 REVERSED AND REMANDED.
 

 Judges HUNTER, JR. and ZACHARY concur.
 

 [1]
 

 Liles
 
 cited to
 
 N.C. Gen. Stat. § 97-2
 
 (e) (1956), the predecessor statute and section to the present-day N.C.G.S. § 97-2(5).
 

 [2]
 

 The facts of this case are decidedly unlike those in
 
 Tedder
 
 , where the employee was "a temporary employee hired to work for a limited time period of seven weeks."
 
 Tedder
 
 ,
 
 238 N.C.App. at 172
 
 ,
 
 767 S.E.2d at
 
 101 ;
 
 see also
 

 id.
 

 at 176
 
 ,
 
 767 S.E.2d at 103
 
 ("[I]n calculating average weekly wages for employees in temporary positions, the Commission must consider the number of weeks the employee would have been employed in that temporary position relative to a 52-week time period.").